ALANSON D. WATERS *vs.* SAMUEL HUBBARD AND ANOTHER.

*H* mortgaged several parcels of land to *A* to secure a note.   *W* purchased a part of the lots of *H*, and by the deed agreed to assume and pay the mortgage debt, and mortgaged the lots so purchased by him to *A* to secure such payment.   Held that a petition for a foreclosure brought by *A* against both *H* and *W*, praying for a foreclosure of both the mortgages, was not multifarious.

*A* accepted the mortgage of *W* only as additional security, and with no intention to discharge *H*.   Held that, while by the assumption of the mortgage debt by *W*, *H* might become as between themselves a mere surety in respect to the debt, yet his relation to the mortgagee was not changed.

*A* part of the land mortgaged by *H* had been previously mortgaged by him to *M*, and had since been foreclosed by a decree against both *H* and *A*.   After the expiration of the time for redemption *A* had purchased the land of *M*, under an agreement previously made that if no one redeemed he could have it on paying the mortgage debt and all expenses of the foreclosure.   Held that *H* acquired by *A's* purchase of this land no right to redeem it with the other land mortgaged.

The decree required *W* to pay the entire mortgage debt within the time limited or be foreclosed as to the property mortgaged by him, and on his failure to make such payment required *H* to pay the debt or be foreclosed as to all the property.   Held to be correct.

If the mode of applying the mortgaged property to the payment of the mortgage debt were, as in some of the states, by a sale and application of the proceeds, the decree should have required the land mortgaged by *W* to be first sold and its proceeds applied; but under our law the mortgagee is entitled to all the mortgaged property unless the debt is paid.

It seems that a decree of foreclosure requiring one respondent to pay a certain debt or be foreclosed, and another respondent, on his failure, to pay a part of the debt or be foreclosed, is valid.

BILL for a foreclosure; brought to the City Court of the city of Hartford, and heard before *Sumner*, *J.*

The bill alleged that Samuel Hubbard on the 28th of January, 1875, mortgaged to the petitioner a certain piece of land in the city of Hartford, subject to a mortgage to one Montgomery, and eleven other pieces also in Hartford, free from encumbrance, to secure a note of $6,000; that Montgomery at the March term, 1875, of the Superior Court, obtained a decree of foreclosure of the mortgage to him, such foreclosure becoming absolute against Hubbard and the petitioner in July, 1875; that Hubbard on the 3d of April, 1875, mortgaged two of the eleven pieces to the petitioner by a second mortgage, to secure a note of $300; that on the 27th of August, 1875, Hubbard conveyed to Wyllys Wells six of the eleven lots, including the two covered by his second mortgage, the deed to Wells containing a provision that the grantee assumed and agreed to pay the entire mortgage debt of $6,300 due to the petitioner; that Wells, on the 13th of April, 1876, mortgaged all the six lots conveyed to him to the petitioner, to secure payment of the $6,300; that neither Hubbard nor Wells had paid the mortgage debt; and praying for a decree of foreclosure against them both.

The respondents filed a motion for the dismissal of the bill on the ground of multifariousness, which motion the court denied.

The court found the allegations of the bill to be true, and the following further facts:

All the lots embraced in the first mortgage of Hubbard to Waters, the petitioner, (except the piece mortgaged to Montgomery,) had been on the same day conveyed to Hubbard by Waters, and as a part of the transaction Waters executed and delivered to Hubbard the following instrument under his seal: "Whereas Samuel Hubbard has this day mortgaged to me certain lands lying in Hartford, for a particular description of which reference may be had to said mortgage deed, now I, Alanson D. Waters, in consideration thereof, hereby covenant and agree with the said Hubbard that, in case he should sell any part of the land at a fair price, I will release such part to him, or to the purchaser, upon his paying or assigning to me in part payment of my said debt the sum or sums that he shall receive for said sales. Hartford, Jan. 28, 1875."

On the 3d of April, 1875, Hubbard made a second mortgage to Waters of two of the eleven lots, to secure a note of $300.

On the 15th of April, 1876, Wyllys Wells, at the request of Waters, mortgaged to him the six lots which had been conveyed by Hubbard to him, to secure the two notes of Hubbard which he had assumed. The defeasance of the mortgage was as follows: "The condition of this deed is such, that whereas the grantor is justly indebted to the grantee in the sum of six thousand three hundred dollars, as evidenced by two promissory notes made by Samuel Hubbard, payable to the said grantee or order, one being dated January 28, 1875, for six thousand dollars, payable one year from date, with the interest semi-annually, and the other dated April 3d, 1875, for three hundred dollars, payable on demand with interest semi-annually, I having assumed and agreed to pay said notes and the interest on them from September 1st, 1875; now therefore, if said notes shall be well and truly paid according to their tenor, and the interest thereon, and the interest on the interest as above since due, then this deed shall be void, otherwise in full force and effect."

Previous to the last Monday of June, 1875, the time that the foreclosure was to take effect against Hubbard in the case of the Montgomery mortgage, Hubbard made an agreement with Montgomery by which, if he should pay the amount found due on or before the Saturday next preceding the first Monday of July, 1875, it was to be accepted as if it had been paid on the last Monday of June. On the first Monday of July, 1875, Hubbard proposed to Montgomery that one Graves should take an assignment of the mortgage, and Graves offered to do so and pay Montgomery the amount of his claim, but Montgomery declined to make the arrangement. The time for redemption by Waters expired the first Monday of July, 1875. Before the last Monday of June, Waters and Montgomery made an agreement that if no one should redeem within the time limited by the decree, Montgomery would deed the land to Waters, upon his paying him the full amount of the mortgage debt and interest, and all costs and expenses incurred in

the foreclosure.    Neither Hubbard nor any one did redeem, and the title to the property became absolute in Montgomery.

Two days after Waters took from Montgomery a deed of the property, and now holds the title.    The value of the property is no greater than the amount paid to Montgomery by Waters with the addition of interest and taxes.    Waters told Hubbard, before he took the deed from Montgomery, that if he had it Hubbard might have the land by paying all the claims upon it, by which Waters meant all that he paid Montgomery, and the two notes, and interest on all, but Hubbard understood him to mean that he could have the Montgomery property by repaying what Waters paid for it.    Hubbard has never offered to pay the notes to Waters.

Waters did not intend by any of the foregoing transactions to release Hubbard from payment of any part of the indebtedness, or to surrender any part of the security held by him for the same, and did not take the agreement of Wells to pay the notes in place of the obligation of Hubbard thereon, but as additional security for them.

Upon these facts the court passed a decree that if Wells should fail to pay to the petitioner the amount of the two notes, with interest and costs, on or before the first Monday of November, 1876, he should be foreclosed of all right to redeem the lands mortgaged by him to the petitioner; and that, he failing to redeem, if Hubbard should fail to pay the $6,000 note and interest and costs on or before the second Monday of November, 1876, he should be foreclosed of all right to redeem the lands mortgaged by him.

The respondent Hubbard brought the case before this court by a motion in error, assigning the following errors:

1.    That the judgment ought to have been rendered in favor of both of the respondents for the insufficiency and multifariousness of the petition.

2.    That the court ought to have decided that after the contract between Hubbard and Wells, by which Wells agreed to pay the debt to Waters, his relation to that debt was that of a surety, and that he was discharged from the payment of the same by the contract made between Wells and the petitioner.

3. That the court ought to have decided that the debt for which the property was mortgaged, being as to Hubbard paid, he was entitled to redeem that part of the property which had been previously mortgaged to Montgomery, upon his paying the petitioner the amount of the debt due Montgomery, with the costs and interest.

4. That the court ought to have decided that the property mortgaged by Wells to the petitioner to secure the payment of the debt therein described, should be first appropriated to the payment of the debt, before taking for that purpose the property of the respondent Hubbard.

5. That the court passed a decree requiring Wells to pay one sum or be foreclosed, and requiring Hubbard to pay a different sum or be foreclosed.

*E. Goodman* and *R. Welles*, for the plaintiff in error.

1. The court below erred in not dismissing the petition on the ground of multifariousness. Story's Eq. Pl., § 271.

2. By the contract between Hubbard and Waters, made at the time the mortgage of six thousand dollars was given, when Hubbard sold any of the land mortgaged Waters was to receive the sum for which it was sold until his debt was paid. In pursuance of that agreement, Hubbard, when he sold to Wells, agreed with him to pay Waters so much of the sum he was to pay him as would pay his debt to Waters, and Waters took Wells's obligation and mortgage for the amount. By this contract between Hubbard and Wells it became the primary duty of Wells to pay the two notes that Hubbard had given Waters as they became due. If he did not, Hubbard, and no one but Hubbard, could sue Wells for the non-payment of those notes. *Mellen* v. *Whipple*, 1 Gray, 317; *Foster* v. *Atwater*, 42 Conn., 244. Wells being thus primarily liable to pay our debt to Waters, our relation to Waters was that of a surety for Wells. *Blyers* v. *Monholland*, 2 Sandf. Ch., 478; *Russell* v. *Pistor*, 3 Seld., 171; *Marsh* v. *Pike*, 10 Paige, 595; *Morris* v. *Oakford*, 9 Penn. S. R., 498; *Atwood* v. *Vincent*, 17 Conn., 575, 583; *Chapman* v. *Beardsley*, 31 id., 115. In the decree of the court, passed in this case, Wells was treated as the one primarily liable.

3. The relation between Hubbard and Wells having thus become that of principal and surety, any alteration of the contract between Waters and Wells would discharge the surety. It makes no difference that the alteration might be beneficial to the surety. Burge on Suretyship, 216. The contract has been altered by Waters and Wells. By Wells's mortgage to Waters four of the lots were made liable to pay Hubbard's note for three hundred dollars that were not before that time liable. Waters has also taken Wells's obligation to him to pay the sum of six thousand three hundred dollars, not only with the interest, but with interest on the interest. Hubbard had delegated Wells to pay the debt, and when he, the person delegated, made this valid obligation to Waters, Hubbard was discharged. Burge on Suretyship, 167, 177. It is the acceptance of a new obligation which discharges the surety. *Simmons* v. *Guise*, 46 Geo., 473; *Dever* v. *Akin*, 40 Geo., 423. This is a novation; Waters takes a new creditor. *Heaton* v. *Auger*, 7 N. Hamp., 397; *Eylis* v. *Ellis*, 4 Bing., 112.

4. Hubbard being merely surety for Wells for the payment of the debt to Waters, and Waters having accepted a mortgage of property to secure the debt from Wells, he must first apply the property so mortgaged to him to the payment of that debt before he can take the property mortgaged to him by Hubbard. *Marsh* v. *Pike*, 10 Paige, 595; *Blyer* v. *Monholland*, 2 Sand. Ch., 478; *Halsey* v. *Reed*, 9 Paige, 446; *Russell* v. *Pistor*, 3 Seld., 171.

5. It is found that it was agreed between Montgomery and Hubbard that the time should be extended to pay the debt due Montgomery, and that Waters agreed to reconvey the land to him when his debt was paid. We claim therefore that the decree of the court should have included this Montgomery tract, and that Hubbard should have been allowed to redeem it with the rest, paying of course what Waters had been compelled to pay Montgomery with interest upon it. Waters's purchase of Montgomery was in equity a redemption and not a purchase.

*H. S. Barbour* and *S. Barbour*, for the defendant in error.

1.  The petition is not multifarious, or insufficient to sustain the decree. By the different conveyances the title to all the lots is so interlocked that the whole matter is a proper subject of one suit, and to bring several suits to effect the object sought by this bill would be vexatious and not allowable. 2 Swift Dig., 247; *Mix* v. *Hotchkiss*, 14 Conn., 31; *Cornwell* v. *Lee*, id., 524; Story's Eq. Pl., §§ 413, 530, 539; 4 Bouvier Inst., notes 4165, 4243; Adam's Equity, 614; *Oliver* v. *Piatt*, 3 How., 411; *Pettis* v. *Kellogg*, 7 Cush., 456; *Fuller* v. *Acker*, 1 Hill, 473.

2.  Hubbard did not become surety nor was his liability to Waters changed or affected, and all the lots now held by him are liable for the $6,000 note. *Atwood* v. *Vincent*, 17 Conn., 582, 583; *Hammond* v. *Gilmore*, id., 487; *Bull* v. *Allen*, 19 id., 105; Story on Cont., § 481; Bouvier's Law Dict., "Surety" and "Novation."

3.  Hubbard is not discharged from his liability on the notes by the agreement of January 28th, as nothing afterwards occurred between the parties to which the agreement can apply; nor does the mortgage of Wells to Waters have that effect, as it was not so intended. *Boswell* v. *Goodwin*, 31 Conn., 74; *Glazier* v. *Douglass*, 32 id., 400; Burge on Suretyship, 168, 174; *Tripp* v. *Vincent*, 3 Barb. Ch., 614; *Sent* v. *Morrill*, 25 Cal., 492.

4.  As to the land mortgaged to Montgomery. That mortgage is foreclosed, and the interest of Waters is wholly by an independent purchase. Besides, the only request of the respondents by their answer was, that the value of the land above the debt of Montgomery be deducted from the petitioner's debt, and the court found that the value of the land does not exceed the Montgomery debt, including interest, costs and taxes.

5.  As to the property mortgaged by Wells being first applied to pay the mortgage debt. It does not appear but that all the property mortgaged was needed for the payment of the notes. And besides, without a sale of the mortgaged property, which our practice does not allow, no such appropriation could have been decreed.

6. The decree is right in requiring Wells to pay both notes, and Hubbard only one. If Hubbard were required to pay both notes to save the lots he now holds, when none of those lots are mortgaged to secure the $300 note, he might well complain. It is not unusual to decree the payment of different sums by different respondents. *Mix* v. *Hotchkiss*, 14 Conn., 31.

CARPENTER, J. This is a petition for a foreclosure. The petitioner holds three mortgages. The first is from the respondent Hubbard, and covers twelve lots of land, (including one subject to a prior mortgage, which was subsequently foreclosed, and from which the petitioner realized nothing,) to secure a note for six thousand dollars. The second is from Hubbard, and covers only two of the lots embraced in the first mortgage, and was given to secure a note for three hundred dollars. The third is from the respondent Wells, who purchased of Hubbard six of the lots described in the first mortgage, including the two described in the second mortgage, and assumed the payment of both the notes to the petitioner. This mortgage covers the lots so purchased by Wells, and was given to the petitioner to secure the payment of the two notes assumed by Wells as above stated. The decree forecloses Wells, in respect to the lots purchased and mortgaged by him, unless he pays within the time limited the full amount of both the notes. If he fails to redeem, Hubbard has an opportunity to redeem by paying the amount due on the large note, but he is not required to pay the small note. On a motion in error several objections are made to the validity of the decree.

The first is that the petition is multifarious. The rule on this subject is well stated by CHURCH, J., in *Mix* v. *Hotchkiss*, 14 Conn. R., 42, as follows:—"An objection to a bill in equity for multifariousness is well taken, when several plaintiffs by one bill demand several matters perfectly distinct and unconnected against one defendant; or when one plaintiff demands several distinct and unconnected matters against several defendants. But where one general right is claimed

by the bill, though the defendants have separate and distinct interests, the bill is not multifarious."

In this case the petitioner has the legal title to all the land described in the mortgages, except the piece foreclosed by a prior mortgagee.    The bill is brought to accomplish one object —the extinguishment of the equity of redemption.    Both respondents are interested in that, and both are properly made parties.    This objection ought not to prevail.

The second and third errors assigned are in substance the same—that by the contract between Hubbard and Wells, by which Wells assumed and agreed to pay the debt to the petitioner, Hubbard's relation to that debt became that of a surety, and that he was discharged from the payment of the same by the contract made between Wells and the petitioner, by which Wells gave, and the petitioner accepted, the third mortgage; and that the court ought to have so decided.

We think there was no error in this.    Whatever may have been the relation which Hubbard and Wells sustained to each other as between themselves, as against the petitioner it is obvious that the relation of Hubbard to the mortgagee was not changed; he remained the principal debtor still.    There was no novation; Hubbard's notes remained outstanding, and he alone was liable thereon in an action at law.    The agreement of Wells to pay the same, and the mortgage given to secure performance, were accepted as additional security, with no intention to discharge Hubbard.    On this point the finding is clear and conclusive.

In the fourth assignment of error it is objected that the court ought to have decided that, the mortgage debt being as to Hubbard paid, Hubbard was entitled to redeem that part of the property which was foreclosed by Montgomery, the prior mortgagee, upon paying the petitioner the amount paid by him, including costs and interest, to Montgomery.

This objection rests upon an assumption which is true neither in fact nor in law—that the mortgage debt as to Hubbard was paid.    The taking of security from a third party, there being no substitution or novation, is not, in law, the payment of the debt.    Nor is it easy to see upon what princi-

ple Hubbard is entitled to redeem the land foreclosed by Montgomery. His equity of redemption was extinguished when the decree took effect. The subsequent purchase of that property by the petitioner was an independent transaction, in no way affecting Hubbard, and there was no contract by which he acquired a new right to redeem.

There was no error therefore in the ruling of the court that he was not entitled to redeem the Montgomery property.

The last claim that is made is, that the court ought to have decided that the property mortgaged by Wells to the petitioner to secure the payment of the debt therein described, should be first appropriated to the payment of the same, before taking for that purpose the other property of the respondent Hubbard.

The authorities cited in support of this claim are from the state of New York. In that state the process of collecting a mortgage debt is by a sale of the property and an appropriation of the proceeds to the payment of the debt. If that practice prevailed here it would be manifestly just and equitable that the Wells property should be first sold. But our practice is entirely different. Under that the petitioner is entitled to all the property mortgaged unless his debt is paid.

There is no error in the judgment of the court below.

In this opinion the other judges concurred.