# Willock's Estate.

*Mortgage—Sale of mortgaged premises—Payment—Liability of mortgagor—Act of April 28, 1903, P. L. 327.*

1. Where a mortgagor conveys the mortgaged land under and subject to the mortgage which the grantee "assumes and agrees to pay" and subsequently after several conveyances each, except one, containing the same covenant, the mortgagee agrees without the knowledge or consent of the mortgagor with the owner of the land to extend the time of payment of the mortgage debt in consideration of an increase in the rate of interest, and the owner "guarantees the payment of the principal and interest," the mortgagee may, upon default and upon failure to collect the whole of the mortgage debt in foreclosure proceedings, proceed against the mortgagor to recover the deficiency, if the latter has not protected himself by a proceeding under the Act of April 28, 1903, P. L. 327, relating to the release of personal liability of mortgagors.

2. In such a case the fact that in the line of the conveyances one of the grantees may not have been personally liable for the mortgage debt, does not alter or affect the relation of subsequent grantees who had agreed to pay.   They are all held liable to the mortgagee under their covenant.

HEAD, PORTER and HENDERSON, JJ., dissent.

Argued April 27, 1914.   Appeal, No. 100, April T., 1914, by Harry H. Willock et al., from decree of O. C. Allegheny Co., Sept. T., 1913, No. 71, dismissing exceptions to adjudication in Estate of S. M. Willock. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.   Affirmed.

Exceptions to adjudication of MILLER, J.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*J. S. Christy*, with him *Dunn & Moorhead*, for appellants.—Mortgagee dealing with the purchaser of the mortgaged property, without knowledge or consent of the mortgagor, does so at his own peril: Cook v. Berry, 193 Pa. 377; Blood v. Crew-Levick Co., 171 Pa. 328; Morris v. Oakford, 9 Pa. 498; Union Mut. Life Ins. Co. v. Hanford, 27 Fed. Repr. 588; George v. Andrews, 60 Md. 26; Murray v. Marshall, 94 N. Y. 611; Calvo v. Davies, 73 N. Y. 211; Meigs v. Tunnicliffe, 214 Pa. 496; Metz v. Todd, 36 Mich. 473; Paine v. Jones, 76 N. Y. 274; Union Stove & Machine Works v. Caswell, 48 Kansas, 689.

The real question before the court, as we view it, is one which can be in no way affected by the existence of the act of 1903, but depends upon the principles relating to suretyship and the equities.   If, under these principles, which are of general application, this estate was relieved from liability, it should not now be fastened with liability because the legislature has seen fit to give an additional to the mortgagor: Pratt v. Waterhouse, 158 Pa. 45.

The mortgage in this case was given on March 23, 1889.   The act in question was not passed until April 28, 1903: Bronson v. Kinzie, 1 Howard, 311; Brine v. Insurance Co., 96 U. S. 637.

*H. G. Tinker*, with him *Shiras & Dickey*, for appellee. —The finding of the court below is correct and should be affirmed:

1. Because the relation of the mortgagor, his vendee who assumed and agreed to pay the mortgage and the mortgagee, who dealt with the vendee and extended the time of payment, is not that of principal and surety.

2. Because the obligor was not a party to the agreement of February 14, 1908.

3. Because the obligor did not follow the provisions of the Act of April 28, 1903, P. L. 327, which provides the method to be pursued by an obligor who wishes to be relieved from liability on his bond.

The agreement of February 14, 1908, was not a novation: Lauer v. Yetzer, 3 Pa. Superior Ct. 461; McCartney v. Kipp, 171 Pa. 644; Curtin v. People's Nat. Gas Co., 233 Pa. 397.

OPINION BY KEPHART, J., July 15, 1914:

S. M. Willock, the decedent, borrowed from the Pennsylvania Company for the Insurance on Lives and Granting Annuities, Trustees, etc., $9,500, payable in five years, with interest at four and one-half per cent, and gave therefor his bond and mortgage dated March 23, 1889. On May 4, 1906, Willock conveyed the land to one Aronson by deed, which conveyance contained the following clause: "Under and subject to the lien of a certain mortgage in the sum of $9,500 . . . . which said mortgage the said party of the second part assumes and agrees to pay as part of the consideration for the property hereby conveyed." On December 19, 1906, Aronson conveyed the property to one Fraser by deed, which contained this clause: "Under and subject to the lien of a certain mortgage in the sum of $9,500." Fraser, in 1907, conveyed the land to one Bauer, and Bauer, in the same year, conveyed the land to one Wonn. In each of these two last mentioned conveyances the

identical clause which appeared in the deed from Willock to Aronson is present. The mortgagee executed with Wonn and Bauer, the two last named grantees, an agreement, dated February 14, 1908, which, after reciting the mortgage above mentioned, provides as follows: "1st. The interest to be paid on said bond . . . . shall be at the rate of five and four-tenths per centum per annum. 2d. The principal of said bond will not be paid or tendered to· be paid by the obligor or owner of the mortgaged premises for a term of five years from January 14, 1908, with the privilege of paying off at any time after the expiration of two years by giving sixty days' previous notice of their intention so to do. 3d. The party of the first part (mortgagee) will not demand payment of the principal of said bond during the said extended time, if the interest is paid semi-annually, and if a receipt for all taxes assessed on the mortgaged premises shall have been presented on or before July 14 of each and every year. 4th. The party of the second part (grantees) guarantee the payment of the principal and interest of such bond so secured, together with all taxes assessed as aforesaid." Default having been made in the payment of interest and taxes a scire facias was issued, which was returnable the first Monday of May, 1913. Upon judgment recovered and levari facias issued, the property was sold for the sum of $11,000, being $698.12 less than the amount due on the mortgage, with interest and costs. The mortgagee, at the audit of the estate of the mortgagor, presented its claim for the balance due on the bond of S. M. Willock, amounting to $748.12. The claim was resisted by the executors of this estate of S. M. Willock, mortgagor, claiming that the extension of time, having been granted without the knowledge or consent of the mortgagor, extinguished his personal liability on the bond. The auditing judge allowed the claim to the extent of $698.12. The allowance of this claim, with other minor matters, is here assigned as error, the ap-

pellants claiming, as they did in the court below, that the mortgagor was released from personal liability.

The question here presented is not without considerable difficulty owing to the trouble in determining the legal aspect in which the mortgagor and grantee may be held with respect to the mortgagee under the facts exhibited by this record. The general rule is that one purchasing under and subject to the lien of a mortgage, given by his vendor, and agreeing to pay the mortgaged debt, is a purchaser as between himself and the vendor of the entire estate and is liable to pay the mortgage as part of the purchase money due from him. Therefore, as between them, the grantee is the principal debtor, primarily and personally liable for the debt, and the grantor surety: Blood v. Crew Levick Co., 171 Pa. 328; Cook v. Berry, 193 Pa. 377; Morris v. Oakford, 9 Pa. 498. And this principle seems to have been sustained by a majority of the states: Jones on Mortgages (6th ed.), sec. 742.

The rights of the mortgagee remain unchanged and his relation to the mortgagor is not affected by the mere circumstance of an agreement to pay the mortgaged debt, so that, as against him, the mortgagor is in no position to assert and take advantage of the surety. The mortgagee may agree to accept this relationship, but the agreement must be such as would amount to a novation and indicate a clear intention to look solely to the grantee for the payment of the mortgaged debt, holding the mortgagor as surety. "There must be a substitution of a new obligation for the old one and the new obligation must be a valid one:" Fish v. Glover, 154 Ill. 86; Shepherd v. May, 115 U. S. 505; Hayward v. Burke, 151 Ill. 121; Corbett v. Waterman, 11 Iowa, 86; James v. Day, 37 Iowa, 164; Massie v. Mann, 17 Iowa, 132; Thompson v. Bertram, 14 Iowa, 476; Waters v. Hubbard, 44 Conn. 340; Marsh v. Pike, 1 Sandf. Ch. 210.

A diversity of opinion exists as to whether the grantee

assumes a direct liability to the mortgagee. In this state, in Blood v. Crew, etc., Co., supra, the mortgagee proceeded against the grantee on the covenant in the deed; and from the authorities there cited this is sustained on the principle "that a party may sue on a promise made on sufficient consideration for his use and benefit, though it be made to another and not to himself:" Merriman v. Moore, 90 Pa. 78. Thus applying the equitable doctrine that a creditor may avail himself of any security which his debtor holds from a third person for the payment of a debt: Kelly v. Ashford, 133 U. S. 610. It has been held in this state that as to the mortgagee, the mortgagor and his grantee are each liable as principal debtors. In Old Colony Trust Co. v. Allentown, etc., Transit Co., 192 Pa. 618, Mr. Justice GREEN says: "By his covenants to pay the amount of the mortgage, and the interest accruing thereon, as a part of the purchase money of the premises conveyed by M. and R., B. made the debt his own as between himself and his vendors (mortgagors): Campbell v. Shrum, 3 W. 60; Blank v. German, 5 W. & S. 36. But as they still stood bound for it to P. the relation of principal and surety was established as between them and B. immediately on the execution of the conveyance, though each continued liable to P. as principal debtor:" Fish v. Glover, supra.

Did the agreement to extend the time of payment amount to a novation, or was it an implied agreement to accept the purchaser as sole debtor? As was stated in McCartney v. Kipp, 171 Pa. 644, "It must clearly appear, however, that a substitution was in fact intended; and that where another person becomes a debtor, instead of a former debtor, that he was so accepted by the creditor, who thereupon discharged the first debtor. In other words, it must be shown that the parties in interest assented to the extinguishment of the old debt." The question as to an implied agreement to accept the purchaser as sole debtor is open to

the same objection. The agreement states, among other things, that the grantee "guarantees the prompt payment of the principal and interest of the bond." This "guarantee" implies a primary liability in some capacity on the part of some one other than the guarantors. It is, in a sense, repugnant to the relationship which the law creates as between all the parties here concerned but the language of this agreement is not sufficient to predicate the acceptance of a new debtor in place of a former debtor. The increased rate of interest is a compensation or consideration for the extension. The agreement, therefore, was not a novation nor an implied acceptance of the grantee as sole debtor.

The chief contention of appellant and what we are urged to declare is, that this extension of time of payment to the grantee converts the direct liability of the mortgagor on his bond, due at a certain time, for a certain amount, into that of a surety, and the instrument that creates this suretyship ipso facto releases the surety (mortgagor) from all liability on the bond. It must be remembered that the mortgagee and grantee are known to us as "principal debtors," "each continuing liable" severally, for the payment of the debt. To hold as appellants contend for, we must hold that one of two debtors, severally liable, could not be released without releasing the other.

The authorities are not in accord on the proposition as to whether or not an extension of time releases the mortgagor. In some states where the grantee assumes this personal liability he is thereby directly liable to the mortgagee as principal as soon as the mortgagee knows of this assumption, and thereafter the mortgagor is surety to the mortgagee: Calvo v. Davis, 73 N. Y. 211; Home National Bank of Chicago v. Waterman, 134 Ill. 461–467; Higgins v. Evans, 188 Mo. 627; Traverse v. Dorr, 60 Minn. 173. The remedy of the mortgagee against the grantee has had some influence in determining this relationship between the parties and the consequent

release of the mortgagor in case of an extension of time. In the states referred to, the mortgagee may sue the grantee at law without the intervention of any equitable principles: Dean v. Walker, 107 Ill. 540; Burr v. Beers, 24 N. Y. 178. And where the relationship of principal and surety exists as to the mortgagee, the well-known rule in force in almost every state in the Union is that a creditor cannot for a definite time extend the time of payment without thereby releasing the surety.

In the supreme court of the United States it has been held that the mortgagee does not have the right to proceed directly against the grantee on a covenant but may do so through equitable proceedings. Expressing the view of that court Mr. Justice GRAY says: "In view of the law there might be some difficulties in the way of holding that a person who is under no direct liability to the mortgagee was his principal debtor and that the only person who was directly liable to him was chargeable as surety only and consequently that the mortgagee, by giving time to the person not directly and primarily liable to him, would discharge the only person who was thus liable: Union Mut. Life Insurance Co. v. Hanford, 143 U. S. 187. This case construed the law of Illinois, which holds that the mortgagor is released. In some states where the mortgagor is released, the impairment of the right of subrogation seems to have influenced the courts in reaching such conclusion. In Murray v. Marshall, 94 N. Y. 611, the authority most quoted to support the doctrine of release, it is said: "When the creditor extended the time of payment by a valid agreement with the grantee, he at once, for the time being, took away the vendor's original right of subrogation." In Dennison University v. Manning, 65 Ohio, 138, in which the time was extended and the rate of interest was increased, the court says: "They could not be deprived of their right at any time to pay off the debt and proceed against the purchaser on his assumption of its payment. Not being parties to an

agreement for an extension, they were not bound by it, and all the remedies that they possessed before the extension remained to them after."

In discussing the question of subrogation we will consider the Act of April 28, 1903, P. L. 327, relating to the release of personal liability of mortgagors. This is an act in enforcement of the equitable right of subrogation and recognizes the rule that this right of subrogation in the mortgagor is not superseded by an agreement to which he was not a party. The act provides that where one, being the owner of real estate, conveys the same subject to his bond or other obligation and mortgage given by him, the said mortgagor shall have the right at any time after the maturity of the said mortgage, according to the terms and conditions thereof, to tender payment and make payment of the debt and interest, and thereupon to demand from the mortgagee or owner the assignment of the bond and mortgage, and if he fails to assign them, the mortgagor is released from liability. Attention is called to the fact that this act refers to the bond and mortgage given by the mortgagor, according to its terms and conditions, not to a bond and mortgage loaded down with new conditions imposed by others to which the mortgagor was not a party, but the bond and mortgage as they existed at the time he signed them. It is to these instruments that the equity of subrogation is directed, when he places himself in a position, either through his statutory remedy or under his equitable right, to demand their assignment. The mortgagee or owner of the instrument, is bound to comply with the demand, and if he fails by reason of his contract with the grantee, or any other legal reason, the mortgagor is released from liability. It may be that in this extension the mortgagee was careful to provide for just such steps and be ready to comply with the demand. If he does not comply, the act of 1903 enables the mortgagor to place on record, as constructive notice to prospective

purchasers of the bond and mortgage, the fact that he has been relieved of personal liability. The mortgagee must be ready to permit the mortgagor to pay his bond when it is due and to have returned to him unimpaired the collateral, this primary fund that he put up to insure payment, namely, the mortgage covering what was at one time his land. Should the mortgagee comply with the terms of the demand, under the act of 1903, and assign the mortgage and bond, the mortgagor can thereafter foreclose as though the extension were not in existence. If such proceeding should result in a loss to the person to whom the extension was given, his remedy would be against the giver of the extension for such damage. The mortgagor has received the full consideration, has executed his solemn promise in writing to pay the obligation unconditionally. The sale of the mortgaged property is made between the parties to it solely for their advantage and in no sense for the benefit of the mortgagee. He need not know, and ordinarily does not know, anything about the transaction until after it is completed. If he happens to know that the negotiation is in progress, it is not within his power to resist it, nor has he any voice in shaping it. He is as absolutely helpless to prevent it as a total stranger: Dennison University v. Manning, supra. And in the case at bar the mortgagor took no steps during the entire period over which the extension ran indicating to the mortgagee his desire to force collection of the indebtedness. He did not offer to pay so as to bring into question his equity of subrogation nor endeavor to enforce his statutory remedy. He permitted his bond, due and payable, to stand out against him all these years without inquiry as to what had become of it. Is this vigilance or safe business practice on the part of the debtor? It might excuse a surety, who quite frequently, through just such neglect, is called upon to make good his principal's loss. The extended period had elapsed before any action had been taken and be-

fore the mortgagor knew anything of it, as far as this record is concerned. The extension as to him, then, amounted to nothing more than a forbearance. Is there not some duty resting on the mortgagor? Should he be permitted to stand by, unwilling, for fear of loss, to risk the ownership of the mortgage by taking the mortgagee's place; yet tacitly permitting the mortgagee to extend the time of payment, willing to accept any benefit from such extension, yet unwilling to assume any loss? He knows that in almost every instance the extension is made to aid the owner of the property, which, in turn, aids the mortgagor, when, by giving such additional time, the grantee or owner would be in a position to liquidate the debt. The covenant of the mortgagor, for the use and benefit of the mortgagee, entailing the personal liability of the grantee, and which gives rise to much of this discussion, was created for the mortgagee without consulting with him and very often without him knowing anything about it. The contested extension of time, as in the case at bar, is for the mortgagor's use and benefit as well as the grantees. The mortgagor, having failed to proceed under the act of 1903, as above indicated, it is now too late for him, or his legal representatives, to complain. We see no good reason why the mortgagor should be given any special immunity as a debtor or why his creditors should be held to a higher degree of caution than any other creditors.

The appellants claim that under the authority of Meigs v. Tunnicliffe, 214 Pa. 495, the mortgagor would be released. We do not so understand this authority. If the relationship of principal and surety, as above referred to, exists between the mortgagor and grantee throughout the entire line of conveyances, as between them the real estate mortgaged was the primary fund for the payment of the debt. And, as stated in Blood v. Crew, etc., Co., supra, p. 338, "The vendee undertakes, on the other hand, that" as principal, and to his surety, the mortgagor, "the land shall remain liable to

seizure and sale for the payment of the mortgaged debt, and that he will do no act that shall tend to withdraw it from the reach of the creditor or prevent the fair application of its full value to the debt if that should be necessary for its payment." As to the mortgagee, the indebtedness was evidenced by the bond and mortgage and the land was collateral security. On the principle of pledgor and pledgee, Meigs v. Tunnicliffe, supra, was decided. The grantee, in violation of his relation as principal and surety to the mortgagor, and the mortgagee, in derogation of the pledgor's right to have the pledged property kept free from wanton loss, withdraws a part of the pledged property from the payment of the debt and for this deliberate wrong the mortgagor was released. In this extension of time the mortgaged property was there in its entirety to answer for the debt. The mortgagor, if he felt aggrieved at the extension, should have availed himself of the act of 1903, and had he done so he could have placed himself in a position where no harm could come to him through the granting of this extension.

The fact that in the line of the conveyances one of the grantees was not personally liable for the mortgaged debt, does not alter or affect the relation of subsequent grantees who agreed to pay. They are all held liable to the mortgagee under their covenant: Merriman v. Moore, supra.

This conclusion makes it unnecessary for us to consider the other assignments of error, which relate to the findings of fact based on a different conclusion. Should we have decided that the extension of time would have released the mortgagor, these facts would have been material to a proper adjudication of this claim. All of the assignments of error are therefore overruled and the decree of the court below is affirmed at the cost of the appellants.

HEAD, PORTER and HENDERSON, JJ., dissent.