## FIDELITY–PHILADELPHIA TRUST CO. v. HALE & KILBURN CORPORATION et al.

### No. 6553.

District Court, E. D. Pennsylvania.
Sept. 16, 1937.

W. Heyward Myers, Jr. (of Morgan, Lewis & Bockius, of Philadelphia, Pa.), for plaintiff.

Isaac A. Pennypacker and William Carson Bodine, both of Philadelphia, Pa., and Allen McCarty, of New York City, for defendant Hale & Kilburn Corporation.

Richardson Dilworth, of Philadelphia, Pa., and Paul D. Miller and H. G. Pickering, both of New York City, for defendant American Motor Body Co.

David H. Kinley, of Philadelphia, Pa., for defendant Hale & Kilburn Co.

KIRKPATRICK, District Judge.

This is a suit in equity brought by the plaintiff as Trustee under a corporate mortgage executed by Hale and Kilburn Corporation, the first of the three defendants. The bill is to foreclose the mortgage, with the usual prayer for deficiency judgments. The defendants will be referred to respectively as follows: Hale & Kilburn Corporation—"H & K Corporation"; American Motor Body Company—the "Body Company"; Hale & Kilburn Company—"H & K Company."

The question involved is whether a trustee for bondholders who has foreclosed a corporate mortgage against property in the hands of the third of three successive owners of the property may, in the same suit, recover deficiency judgments against the two prior owners, each of whom assumed the mortgage debt upon taking title.

H & K Corporation gave the mortgage in 1919. In November, 1920, the mortgaged property was transferred to the Body Company and in June, 1923, by the latter to H & K Company (then under another name). Upon each of these transfers, the succeeding corporation, in accordance with one of the provisions of the mortgage, executed a separate instrument (called a Supplemental Indenture) by which it agreed "to pay the principal and interest" of the bonds and "to perform and fulfill all the terms, covenants, and conditions of the said first mortgage"; and the Trustee also executed the instruments, in each case accepting, "this indenture and agreement under and subject to all the terms and provisions of said first mortgage." In 1930, H & K Company defaulted in interest and sinking fund payments, and, after proper authorization by a majority of the bondholders, the Trustee began this foreclosure suit on May 6, 1931, against all three corporations.

The first two defendants, H & K Corporation and the Body Company, appeared and filed answers to the bill on the merits, denying all liability, by reason of novations, and setting forth certain other defenses.

H & K Company, however, did not answer, and the plaintiff obtained an order to take the bill pro confesso as to it on June 10, 1931. On August 29, 1934, a final decree of foreclosure and sale was entered against the H & K Company. This decree, in the usual form, directed the defendant to pay the mortgage debt in the amount of $1,346,548.16 and provided that in default of such payment the mortgaged property should be sold and that, in case of a deficiency, upon the report of a special master (appointed by the decree) as to the amount, the plaintiff should have judgment against the defendant, H & K Company, for the amount of any such deficiency. Pursuant to this decree, all the mortgaged property and assets were sold at public auction, and the sale was confirmed on October 15, 1934.

The plaintiff then filed a petition under the Pennsylvania Deficiency Judgments Act, to fix the fair value of the property sold. Upon the report of the Special Master, confirmed on September 9, 1935, the Court, on January, 1936, entered a decree in favor of the plaintiff and against H & K Company for a deficiency in the amount of $729,391.-13.

On June 24, 1936 (no further proceedings having been taken up to that time upon the answers of H & K Corporation and the Body Company) the plaintiff caused the suit to be set down for final hearing. Over the objection of the defendants, the suit was placed upon the Equity Trial List and heard in March, 1937.

The foregoing may be taken as special findings of fact.

My general conclusions of law are the Body Company is not liable for the deficiency, but that H & K Corporation is.

A number of questions of law were raised by both defendants, and, since appeal is probable, I think it would be well to state my conclusions upon most of them, although all may not be strictly necessary to the decision of this case.

I. The Body Company, upon conveying the mortgaged property to H & K Company in June, 1923, was discharged from all liability in respect of the mortgage debt, by virtue of the provisions of Pennsylvania Act of June 12, 1878, P.L. 205, 21 P.S. §§ 655, 656.

The Act of 1878 has to do with the personal liability for the mortgage debt of persons who take title to real estate which is subject to a mortgage given by another. The first section (21 P.S. § 655) provides that unless there be an express assumption of such personal liability on the part of the grantee, none will arise. This assumption of liability may be directly to the mortgagor, and it may be assumed that when the Body Company took title to the mortgaged property and executed its Supplemental Indenture, it became fully liable to the plaintiff in respect of the mortgage and bonds.

The second section (21 P.S. § 656) provides in part as follows: "nor shall such personal liability continue after the said grantee has bona fide parted with the encumbered property, unless he shall have expressly assumed such continuing liability."

It seems to me almost too plain for argument that this means that, in order to hold an intermediate grantee who no longer owns the land, he must have said in so many words that he agreed to remain liable after he conveyed the property. The words "expressly assumed such continuing liability" can have no other meaning. The entire purpose of the legislation was to prevent unwitting owners of mortgaged property from being held to obligations which they did not intend to assume, but which the law imposed on them by reason of ownership or implied from general words in the deed which might amount to something less than an explicit assumption. The Act answers two questions. First, under what circumstances may personal liability be created? Second, what is necessary to carry it on after the grantee ceases to be the owner of the property? In each case the answer is the same. Whether it is a liability which begins with ownership or one that continues after ownership is terminated, there must be an express agreement to assume that particular liability. Plainly an agreement to assume one liability was not intended to act as an assumption of the other, and consequently a general assumption of liability upon taking title was never intended to import an agreement that it should continue beyond the time when the property was deeded away.

The plaintiff bases its argument mainly upon an expression of the Supreme Court of Pennsylvania in Kirker v. Wylie, 207 Pa. 511, 56 A. 1074. That case did not present the same situation as the one now before the Court. There, the original mortgagor (corresponding to H & K Corporation) had been sued upon his bond, after foreclosure proceedings against a second grantee (corresponding to H & K Company) had resulted in a deficiency, and had been compelled to pay it. He then sued his immediate grantee (corresponding to the Body Company). The mortgagee was in no way involved, having collected the deficiency from the original mortgagor. The court said, "It is argued, however, that the defendant is relieved by the second section of the act, having parted with the property in good faith, and not having assumed a continuing liability. * * * The liability assumed, which the grantee agreed to pay, was a part of the consideration for the conveyance. It was as much a continuing liability as an obligation to pay a fixed sum of money, and it could be discharged only by payment."

This certainly looks as though the court was construing the Act of 1878 and deciding that a general assumption of liability upon taking title was sufficient to import an agreement to assume a continuing liability in compliance with the terms of that Act. But it is clear, in the light of later decisions, that the Act of 1878 had nothing to do with the case which was before the court; i. e., a case involving rights and liabilities solely between successive owners of the land. This could not have been stated more plainly than it was in Greenspan v. Margolis, 70 Pa.Super. 373, where the court said, "The Act of 1878 applies to the relations between the grantee and the holder of the encumbrance, it does not affect the covenant of the grantee to protect the grantor against loss through his personal liability for the debt to which the conveyance of the land has been made subject." See, also, Appeal of May's Estate, 218 Pa. 64, 67 A. 120; Nedwidek v. Larson, 119 Pa.Super. 198, 201, 180 A. 722. If the court in Kirker v. Wylie, was undertaking to construe the Act of 1878, it was doing so in a case to which the Act had no application, and its construction was pure dictum, based upon an erroneous promise which has been subsequently overruled.

Sloan v. Klein, 230 Pa. 132, 79 A. 403, comes very close to being on all fours with the present case against the Body Company. There (as in the present case) the suit was against an intermediate grantee for a deficiency after foreclosure against the land in the hands of a second grantee. The intermediate grantee did not assume any continuing liability at the time he conveyed the land away. He had, however, assumed liability by a general convenant when he took title. The only point of difference between that situation and the present case was that his agreement was made with his grantor and not, as in the present case, with the mortgagee. One of the two grounds upon which the court put the decision for the defendant was that the second section of the Act of 1878 exempted him because he had in good faith reconveyed the mortgaged premises without assuming a "continuing" liability. If Kirker v. Wylie, supra, had been accepted as an authoritative construction of the Act of 1878, he would not have been relieved since he had, as had the grantee in that case, agreed with the mortgagor to assume liability generally. Kirker v. Wylie, supra,

was not referred to, undoubtedly because it was not a suit by the mortgagee against the intermediate grantee, and it was taken as thoroughly settled that the Act did not apply unless the mortgagee was involved. The decision in the Sloan Case was entirely consistent with the decision in the Kirker Case. What was impliedly overruled was the suggestion of the latter that the terms of the Act could be complied with by a general assumption of liability on taking title.

■ The opinion in Sloan v. Klein, 230 Pa. 132, 79 A. 403, furnishes some ground for the argument made by the defendant that the grantee must not only expressly assume a continuing liability, but must do so at the time the property is conveyed by the grantee. "The defendant also avers that the 'bona fide parted with the property incumbered by said mortgage by sale thereof to Solomon Jacobson, by deed dated * * * and that he did not expressly assume any continuing liability at that time, and has not since done so.' This averment, if sustained at the trial, will, under the provisions of the act, be sufficient to acquit the defendant of liability as charged. * * *" (Page 405.) But I do not think it necessary to the decision of the present case to write that provision into the Act. The language is very plain. The liability may be assumed, but it must be specified as a continuing liability, and it must be assumed expressly. In the present case there is not a word in any of the documents which expressly shows any intention upon the part of the Body Company to be liable for the debt after it parted with title—no express assumption of a continuing liability—and for this reason, I hold that the Act of 1878 precludes any recovery against it.

II. The conveyance to the Body Company by H & K Corporation and the execution by the Body Company and the Trustee of the Supplemental Indenture of November 10, 1920 did not constitute a novation and did not release H & K Corporation from liability in respect of the bonds and mortgage.

(This conclusion applies as well to the conveyance by the Body Company to H & K Company and the Supplemental Indenture of June 15, 1923, executed by the latter and the Trustee, but, since the Body Company is released by the Act of 1878, that is not material.)

■ The burden is always upon one who alleges a novation to prove it. Jones v. Casualty Co., 255 Pa. 566, 100 A. 450. The mere assumption of a debt by a third party is not sufficient, but it is essential that an intention to release the first obligor and extinguish his liability should definitely appear, otherwise the assumption of debt by a third party will be presumed to be merely additional security. There principles are elementary.

It is significant that in none of these instruments, drawn with meticulous care, is there any sentence or clause which expressly releases H & K Corporation. The release of a mortgagor upon transfer of the mortgaged property is not the usual arrangement. No special reason for making it in this case appears. It is remarkable that if the parties intended it, they did not say so plainly.

The mortgage executed by H & K Corporation provided that the mortgagor might convey the mortgaged property to any corporation lawfully entitled to acquire it, but only upon condition that such successor corporation should assume the liability and should execute an indenture satisfactory to the Trustee agreeing to pay the principal and interest of the bonds, etc. Unless and until such indenture was executed, the conveyance would have been in violation of the terms of the mortgage and a breach of its conditions. The Supplemental Indenture was the effective document which created whatever new contractual relations grew out of the transfer. If so important a matter as a novation or a release of the original obligor was really intended to occur at that time one would naturally look for it in the document which the parties were then executing, rather than in an obscure and ambiguously worded clause in the mortgage, incorporated into the Supplemental Indenture by reference only. The Supplemental Indenture, however, is simply an agreement on the part of the Body Company to assume and pay the bonds, to perform the conditions of the mortgage and to keep the property in good order. It is a terse, plainly worded instrument and contains no suggestion whatever of a release of H & K Corporation.

The defendants rely upon a clause in the mortgage which appears in Article 13, Section 2. This section, after providing that the successor corporation, "shall execute * * * an indenture * * * satisfactory to the trustee, whereby the successor corporation shall assume and agree to pay the principal and interest of the bonds," etc., says that such successor, "thereupon shall succeed to and be substituted for the corporation, with the same effect as if it had been named herein as the mortgagor company." Upon the use of the word "substituted" the entire case for a novation is built.

■ It may be at once conceded that the word "substituted" describes a replacement of one thing by another and, in most of its ordinary uses, implies the removal or elimination of the thing replaced. This is not quite so reliable a definition to use when one is dealing with legal relations as when concrete objects are in mind; for example, we have the common case of a substituted trustee, in which the original trustee ceases to act and have the powers of a trustee but continues liable as a trustee for his acts while in office. Nevertheless, the argument is valid and entitled to serious consideration.

In the present case, the first paragraph of Article 13, Section 2, must be read carefully and read as a whole. In the printed mortgage it is separated into two parts by a dash. The first part provides for the execution of the Supplemental Indenture by the successor corporation. The second part contains the clause providing that the latter shall be substituted for the original corporation, and then goes on immediately to deal with the issuance of additional bonds by the successor corporation. Under the original mortgage, additional bonds to a fixed amount might be issued upon certain conditions. This power might not be exhausted before a transfer of the property. Unless the transferee could issue the new bonds, itself, there would be a good deal of inconvenience, complications and possible legal doubts arising from a resort to the original company. It seems quite clear to me that the "substitution" clause was intended to apply to the matter of the issuing of additional bonds. That was the only purpose for which it was desirable and advantageous for all parties to eliminate the original mortgagor.

This does not mean that the liability of the original mortgagor upon the bonds which it had already issued could not be retained. It could have authorized the issue of new bonds by the successor as its agent or representative upon which it would have been liable, or it may have been the intention that the successor corpora-

tion would be alone liable for the additional bonds.

Nor do I think that it is indicative of intention one way or the other, that the Trustee at the time of the transfer made no particular investigation as to the consideration received by the Body Company for the transfer of all of its property to H & K Company. This was in reality a corporate reorganization, and if the Trustee was satisfied that at the time the mortgaged property was ample to answer for the debt and that the mortgage continued to bind the same property after the transfer, it may have conceived that its fiduciary duties required no further steps on its part.

I do not think that the H & K Corporation has met the burden of showing that the transfer to the Body Company was intended to effect a novation, and I think that the "substitution clause" in Article 13, Section 2, of the mortgage was intended to apply only to the issuance of additional bonds.

III. Demand by the Trustee upon H & K Corporation for payment of the bonds was not necessary to give the Trustee the right to recover a deficiency judgment against H & K Corporation in a foreclosure proceeding.

(This also applies to the Body Company, but, again, is immaterial because of the release of the Body Company by the Act of 1878.)

This involves a somewhat technical argument, pressed vigorously by the Body Company, but also advanced by H & K Corporation. It finds expression in the opinion in Continental-Equitable Title & Trust Co. v. National Properties Co., D.C., 273 F. 967. Although it was dictum, Judge Morris held in that case (and I do not question the soundness of the decision upon the facts before him and the rules then in force) that the chose in action, or right of action to recover the debt evidenced by the bonds, resided in the bondholders until demand, and upon demand became vested in the trustee. Demand had been made and the actual point decided, therefore, was that, after demand, the right of action was vested in the trustee. Other cases were cited by the defendant upon this point. Brant Independent Min. Co. v. Palmer, 8 Cir., 1919, 262 F. 370; Mackay v. Randolph Macon Coal Co., 8 Cir., 1910, 178 F. 881; Equitable Trust Co. of New York v. Washington-Idaho Water, Light & Power Co., D.C.E.D.Wash., 1924, 300 F. 601.

Obviously, the precise language of the corporate mortgage involved in each case is the basis for each decision, and each mortgage must be carefully read and studied. In addition, the change in the Equity Rules which occurred after all of the cases above noted were decided, is a matter of vital importance.

In the present case, I think that, if it were necessary to the decision upon this point, there would be very strong ground for holding that the terms of the mortgage itself vested the right to recover a deficiency judgment in the Trustee immediately upon default and without demand. However, this is not perfectly clear, and I shall not base my decision upon it, but it may be mentioned.

Article 9 of the mortgage deals with remedies upon default. Undoubtedly, Section 11, upon which the defendant relies, requires a demand as a condition precedent to the right which it gives to the Trustee. It provides that after default, " * * * upon demand of the Trustee, the Corporation will pay to the Trustee * * * the whole amount due and payable on all such bonds, * * * and in case the Corporation shall fail to pay the same forthwith upon such demand, the Trustee, in its own name and as trustee of the express trust, shall be entitled to sue for and to recover judgment for the whole amount so due and unpaid."

However, Section 4 also has to be considered. It says nothing about demand, but provides that upon certain specified defaults, including default in interest, continuing for 90 days, " * * * the Trustee may * * * proceed by suit or suits at law or in equity or by any other appropriate remedy to enforce payment of the bonds and to foreclose this indenture. * * *"

No doubt Section 4 has to do primarily with in rem proceedings for foreclosure and sale, but the inference is quite as strong that Section 11 has to do with suits at law for the debt, without foreclosure. As between the two, a deficiency judgment, incidental to the foreclosure, seems to belong more logically under the former provision than under the latter, and I see no reason for adding the clause about enforcing payment of the bonds to the foreclosure provision unless it was intended to refer to a deficiency judgment. Selling the property does not enforce payment of the bonds except to the extent of the price which the

property brings. The only way of enforcing payment of the remainder is by a deficiency judgment against the mortgagor. On the other hand, the language of Section 11—"sue for and recover judgment"—aptly describes a suit at law, and the succeeding clause seems to indicate the section had to do with a remedy entirely distinct from foreclosure proceedings.

No reason has been suggested why, as a matter of common sense, the Trustee of this mortgage after default should be vested with the right to take the entire mortgaged property upon foreclosure without any previous demand, but should be deprived of one of the ordinary incidents of foreclosure necessary to enforcement of the bonds—a deficiency judgment.

However, even if the mortgage requires a demand to vest the right to a deficiency in the Trustee personally, it does not, under the Equity Rule now in force, prevent it from suing for and recovering it in its representative capacity in behalf of the bondholders.

At the time the cases cited by the defendant, denying the Trustee the right to recover a deficiency judgment, were decided, the Equity Rule in force was Rule 10, adopted in 1912, 226 U.S. 652. It was as follows: "In suits for the foreclosure of mortgages, or the enforcement of other liens, a decree may be rendered for any balance that may be found due to the plaintiff over and above the proceeds of the sale or sales, and execution may issue for the collection of the same, as is provided in rule 8 when the decree is solely for the payment of money."

On May 4, 1925, the Rule was amended, 28 U.S.C.A. following section 723 (268 U.S. 709) so that now it reads as follows: "In suits for the foreclosure of mortgages or for the enforcement of other liens a decree may be rendered for any balance found to be due over and above the proceeds of the sale or sales; and execution may issue for the collection of the same as is provided in rule 8 when the decree is solely for the payment of money. Such a deficiency decree may be so rendered and enforced whether the plaintiff owns the debt or is a trustee or agent for another or others who own it, as often is true when the debt is evidenced by notes or bonds. Where the plaintiff is such trustee or agent, any money collected on the execution shall be paid to him as such representative, and he shall pay it to the owner of the debt if there be only one, and if there be more shall distribute it pro rata among them according to their respective interests."

It will be noted that the amendment of May 4, 1925 which is the Rule now in force, besides expressly giving a trustee, who does not actually own the debt, the right to recover a deficiency judgment, omitted the words, "to the plaintiff" from the clause "any balance that may be found due to the plaintiff." How important this omission is can be seen from the majority and dissenting opinions in Lane v. Equitable Trust Co., 8 Cir., 262 F. 918, 922.

It is beyond question that the Amendment of 1925 to Rule 10 gives a trustee for bondholders under a corporate mortgage a standing in court as a party to recover a deficiency judgment in a foreclosure proceeding without regard to whether or not he is vested with the ownership of the debt, right to sue or chose in action. The Rule does not change substantive rights. It does not affect what was said in Continental-Equitable Title & Trust Co. v. National Properties Co., supra, to the effect that actual ownership of the debt does not vest in the trustee until demand. It is procedural, and merely makes an agent a proper party to recover a judgment, not for himself as owner of the debt, but for his principals. The rights of the real owners of the debt are guarded by the last sentence of the Rule. Moreover, prior to the Amendment of 1925, the question had been raised in Mackay v. Randolph Coal Co., supra, whether the parties by agreement could give to a third party (the Trustee) the naked right to sue to recover a debt without actual ownership of the debt. This doubt the Amendment set at rest. It seems more than likely that the Amendment of 1925 was promulgated to meet the difficulties which the extremely technical position adopted by the courts in the cases referred to had thrown in the way of corporate foreclosures for the benefit of bondholders. At any rate, those decisions, in view of the changed Equity Rule, are no longer controlling. I therefore conclude that failure to make a demand does not bar the right of the Trustee to deficiency decrees in this suit.

IV. Demand for payment upon H & K Corporation as surety for the succeeding corporation or corporations was not a condition precedent to the plaintiff's right to sue H & K Corporation.

This point is disposed of by the discussion in a later part of this opinion where the question of merger by judgment is fully discussed. Under the conclusion there reached that both the grantee and the grantor are directly and primarily liable (In re Willock's Estate, 58 Pa.Super. 159), it is clear that so far as the mortgagee is concerned, there is no question of suretyship involved or of the incidents which go with that relation. Consequently, it follows that a demand (based upon the assumption that the relation of principal and surety exists as to the mortgagee) is not necessary.

V. The deficiency has been properly proved against H & K Corporation.

(Also against the Body Company, but again is not material in view of the Act of 1878.)

Although the default decree was taken only against H & K Company, both the other defendants appeared at the valuation proceedings before the Special Master on April 9, 1935 and presented testimony as to value of the mortgaged property for the purpose of reducing the amount of any deficiency judgment. After the Special Master filed his report, both filed exceptions, which were argued before the Special Master and, on January 3, 1936, sustained in part and dismissed in part. His report may be referred to for a full discussion of the situation as presented to him. Apparently, all parties were willing that the valuation proceedings, so far as they affected the H & K Company and the Body Company, should be treated as provisional so long as the question of their ultimate liability remained in abeyance, but fully effective against them upon a determination that they or either of them were ultimately liable upon the mortgage. In other words, they were fully parties to a proceeding to determine the amount of a liability subject to the reserved defense that no liability whatever existed.

The foregoing conclusions of law and discussion cover the substantive law of the case. Both the defendants have also raised certain procedural questions. Upon these questions, the following Conclusions of Law are reached:

VI. The plaintiff's right of action against the first two defendants, H & K Corporation and the Body Company, has not been terminated by merger in the final decree against H & K Company.

This point involves the law of merger by judgment. The defendants' position is based, I think, upon a total misapprehension of the true nature of the mortgagee's rights against successive grantees of the mortgage property who have assumed the mortgage debt.

Whether or not the right to recover against a number of defendants is merged in and terminated by a judgment against one depends upon the nature of the contract which is the subject of the suit. If it is a joint contract, a judgment against one defendant merges the entire right of action. See Parr v. Snell, C.A. [1923] 1 K. B. 1. If the contracts are several, this result will not occur, even though, by means of a statutory shortcut, the plaintiff can join his several rights of action in one suit against a number of parties.

There are, in addition, some obligations which are joint-and-several. In such cases the rule is stated, none too clearly, in Sessions v. Johnson, 95 U.S. 347, 24 L.Ed. 596. However, it is not necessary to interpret what was said in that case, because the obligations upon which this foreclosure suit was brought are, in my judgment, several and not joint and not joint-and-several.

The nature of the obligations which arise when land, subject to a mortgage, is conveyed to one who assumes the mortgage are fully discussed in Lowry v. Hensal's Heirs, 281 Pa. 572, 127 A. 219; In re Willock's Estate, 58 Pa.Super. 159, and Merriman v. Moore, 90 Pa. 78. See, also, Appeal of May's Estate, supra, and Blood v. Crew Levick Co., 171 Pa. 328, 33 A. 344. It is, of course, a question of Pennsylvania Law.

Whatever the nature of the relation between the grantor and the grantee may be, their respective liabilities as to the mortgagee are clearly several. Those liabilities came into existence at different times and by different acts. The grantor's obligation arises by reason of a contract (the mortgage) between him and the mortgagee. The grantee's obligations arise from an entirely different contract between different parties—the contract between him and the grantor or the mortgagee by which he agreed to assume the mortgage. In fact, so entirely different is the obligation of the grantee from that of the grantor that, in Lowry v. Hensal's Heirs, supra, it was held that a mortgagee was not a

"creditor" of a grantee corporation within the meaning of Pennsylvania Statutes which give equity jurisdiction between a corporation and its creditors. And in Merriman v. Moore, supra, it was held that the conveyance might create a personal liability on the part of the grantee even though there was none at all on the part of the grantor.

The only possible ground for asserting the joint character of the liability is the fact that courts have frequently characterized the relation between the grantor and the grantee as that of surety and principal. But this description applies only so far as it governs the relations between the grantor and the grantee—that is, the rights of indemnification, subrogation, etc. That it does not affect and does not describe the relationship between the mortgagee and his two debtors is seen in what was decided in Re Willock's Estate, supra, where it was held that the mortgagee may change the terms of the bond by agreement with the grantee, unknown to the original mortgagor, without releasing the latter's obligation—a thing not possible if the original mortgagor were a surety for the grantee. Since the plaintiff's right in this case was several merely, it could not make a joint or joint-and-several right of it by mistakenly calling it such in the bill in equity. Nor did the mere joinder of the defendants constitute an election to sue on a joint contract which would now estop the mortgagee from claiming that obligations are what they really are; namely, several. This for two reasons: First, because the mortgagee denominated the rights both joint and several and was no more committed to the former view of them than the latter (certainly "joint-and-several" includes "several", and the defendant, H & K Corporation's argument based on the distinction between "joint or several" and "joint-and-several" is mere verbalism of the most attenuated kind.) Second, because under Equity Rule 26, 28 U.S.C.A. following section 723, the plaintiff was entitled to join separate causes of action against separate defendants in one suit, so that the mere fact that there was a joinder would not be evidence of an intention to elect.

Finally, "it is a well-settled rule that, in equity, the application of the doctrine of merger depends upon the intention of the parties and a variety of other circumstances. Equity will prevent or permit a merger, as will best subserve the purposes of justice, and the actual and just intention of the parties." 15 R.C.L. 783.

VII. The plaintiff's right to recover deficiency judgments against the first two defendants, H & K Corporation and the Body Company, was not lost by misjoinder of legal and equitable causes of action.

It is true that, in the federal courts as elsewhere, a purely legal cause of action cannot be joined with an equitable one in the same suit. It is also true, however, that Equity Rule 10 expressly authorizes the joinder of a claim for a deficiency with a foreclosure suit. This Rule extended the equity powers of the Court beyond the point at which they had been previously limited by the decision of the Supreme Court in Noonan v. Lee, 1862, 2 Black 499, 500, 17 L.Ed. 278, but it was in accordance with the broad principle that where a court of equity has obtained jurisdiction over some portion of a controversy, it may proceed to decide all the issues and award complete relief even where some of the rights of the parties are strictly legal and the final remedy granted is of a kind which might be conferred by a court of law. See Hartford Co. v. Southern Pacific Co., 273 U.S. 207, 217, 218, 47 S.Ct. 357, 359, 360, 71 L.Ed. 612, and Alexander v. Hillman, 296 U.S. 222, 56 S.Ct. 204, 80 L.Ed. 192.

Federal Equity Rule 26 provides that, "The plaintiff may join in one bill as many causes of action, cognizable in equity, as he may have against the defendant. * * * If there be more than one defendant the liability must be one asserted against all of the material defendants, or sufficient grounds must appear for uniting the causes of action in order to promote the convenient administration of justice. * * *" Thus, by Rule 10, the plaintiff had a cause of action cognizable in equity, which included the rights both to foreclose the mortgage and to have a deficiency judgment, against each of these three defendants. The same liability—the liability to pay the bonds,—was asserted against them all. The conditions of Rule 26 were present and the joinder was authorized.

The requirement that sufficient grounds must appear for uniting the causes of action in order to promote the convenient administration of justice does not, in my judgment, mean that the sufficient

14

grounds must be shown extrinsically as in a petition or some proceeding to obtain the permission of the Court for the joinder. The sufficient grounds for joining these several causes of action in this case are perfectly obvious and appear clearly from the nature of the proceeding itself and the averments of the bill.

 Neither Equity Rule 10, nor any federal decision under it, limits the power of the Court to enter a deficiency decree to one solely against the party who appears to be the record owner of the mortgage property at the time the suit is begun. To so limit it would be to defeat entirely the purpose of Rule 26, which was to remove a mass of technical objections arising from the plea of multifariousness and to arrive directly and speedily at a final disposition of controversies affecting different parties arising out of the same general state of facts. Lowry v. Hensal's Heirs, 281 Pa. 572, 127 A. 219, cited by the defendant, had to do solely with the original equity jurisdiction of the court; it involved no question of misjoinder nor did it arise under the Federal Equity Rules, and it is entirely beside the point.

A decree may be presented in accordance with the foregoing opinion.