Mr. Justice SWAYNE.
 

 A careful examination of the facts disclosed in the record, is necessary to enable us to arrive at a proper solution of the questions presented for our determination.
 

 Lee sold, on the 1st day of October, 1855, he and his wife, by .deed duly executed, conveyed to Noonan certain real estate therein described, as follows:
 

 " One equal undivided half part or share of that certain tract of land bounded and described as follows, viz.: Beginning in the centre of the Milwaukie river, on the centre of the road represented oh the recorded*plat of the village of Mechanicsville as running east and west between blocks five (5) and six (6) in said village of Mechanicsville; running thence easterly in the centre of said street to the centre of a street running north and south between blocks three (3) and (5) in Mechanicsville afore- ■ said; thence southerly in the centre of the last mentioned street to the centre of a street running east and west between blocks three (3) and four (4) in said village of Mechanicsville; thence easterly in the centre of said last mentioned street to a point that would be intersected by a north and south line through the middle of block three (3) in Mechanicsville aforesaid; thence southerly on the line bounding the west ends of lots one (1), two (2), three’ (3), and four (4) in block four (4) in Mechanicsville aforesaid, to south line of said lot four (4) in block four (4) aforesaid ; thence easterly on the south line of lot four (4) in block four (4) to the west line of a lot of land containing about one-' half (J) an acre, represented on said plat of Mechanicsville as being nearly in a square form in the southeast corner of the town plat of Mechanicsville aforesaid; thence southerly on the west line of said last-described tract of land to the south, line of
 
 *502
 
 the town plat of Mechanicsville; thence easterly on said last mentioned line to the east line of fractional lot two (2) in section four (4), in township seven (7), north of range twenty-two (22) east; thence south to the south line of said fractional lot two (2); thence westerly on the south line of said fractional lot two (2) to the centre of the Milwaulde river; thence northerly in the centre of the Milwaulde river as it winds and turns to the place of beginning. Also the privilege of damming and flowing the Milwaukie river on said fractional lot two (2), as high as said’ river would be raised by maintaining a dam at least nine feet high, where a certain dam was located across said river, near the south line of fractional lot two (2), in the year 1837, as described in deed from Daniel Bigelow and Amasa Bigelow to Herman Y. Prentice, recorded in Yolume 'CP of deeds, on page 329, as to flow-water.”
 

 The deed contains a covenant of general warranty.
 

 Upon the same day Noonan executed to Lee a mortgage upon the same premises, conditioned to secure the payment of $4,000, in four equal annual instalments, with interest at the rate of 7 per cent, per annum, payable annually, according to the condition of a bond of the same date executed by Noonan to Lee; and also to secure the payment, by Noonan, of all taxes upon the mortgaged premises. It was further provided, that upon any default by Noonan in respect of the due payment of principal, interest, or taxes, the entire, principal of the mortgage debt should, at the option of Lee, thereupon be deemed to have become due, and should, with the interest thereon, be collectable.
 

 At the time of the éxecution of -the bond, Lee made and signed the following endorsement upon it:
 

 “ I agree, if my title fails to the property, for the consideration of which this bond is given, except as against the United States, for the portion of the river beyond the meandered line, that 1 will not enforce this bond; and if any incumbrance shall be found, that the amount of the same shall be deducted from the moneys to fall due on this bond.”
 

 On the 4th of March, 1859, Lee filed his bill setting forth that Noonan had paid nothing either of principal or interest of the
 
 *503
 
 mortgage debt; tbat he bad notified Noonan tbat he claimed tbe entire debt to be due, and praying for a sale of tbe mortgaged premises, tbe payment of tbe mortgage debt, and for general relief..
 

 Tbe decree finds tbe amount due Lee to be $5,267.20 ; directs tbe sale cf tbe mortgage premises, tbe payment of tbe mortgage debt, and tbe bringing of tbe surplus moneys, if there were any, into Court, and then provides that if tbe moneys'arising from tbe sale were insufficient to pay tbe debt, interest and costs, that tbe Marshal in bis report of tbe sale should specify tbe amount of tbe deficiency, tbat Noonan should pay it with interest,
 
 “and that the complainant may have execution therefor.”
 

 From this decree Noonan appealed to this Court
 

 Several objections are made here to tbe decree:
 

 I. It is said the deed is void because it refers for a part of tbe boundaries to tbe recorded plat of tbe town of Mecbanicsville.
 

 Tbe law of Wisconsin (revision of 1849) requires tbat a town plat shall give
 
 “
 
 tbe names, width, courses, boundary, and extent,” of all streets and alleys; tbat it shall be certified by tbe surveyor, acknowledged before an officer authorized to take tbe acknowledgment of deeds, and tbat it shall then, with tbe certificate of acknowledgment, be recorded.
 

 Tbe 9th section of tbe Act provides tbat if any person “ shall dispose of, offer for sale or lease” any lot or part of a lot before these requirements are complied with, be
 
 “
 
 shall forfeit and pay tbe sum of $25 for each and every lot or part of a lot sold or disposed of, leased or offered for sale.”
 

 This plat was acknowledged on tbe 15th of March, 1886, and recorded on tbe 15th of September, 1855. It does not give tbe names, courses, boundary or length of tbe streets, and it is not certified by tbe Surveyor. Tbe certificate of acknowledgment represents tbe plat as laid out on tbe “ south-east part of the S. B. quarter of section No. 4 in T. No. 7, in R. No. 22 E., on the' east side of tbe Milwaukie river.” It was in fact laid out on fractional lot 2, of tbe section named. Tbe southeast quarter is r upon tbe other side of tbe section and does not approach tbe river. Lot 2 bounds upon tbe river. A large lot delineated on
 
 *504
 
 the plat bounding upon the river is marked “reserved for hydraulic purposes.” An island opposite to it is laid down upon the plat. Fractional lot 2, which is twice referred to in the boundaries as given in the deed, bounds upon the river. Parol evidence, not inconsistent with a-written instrument, is admissible to apply such instrument to its subject. The designation of the “ southeast quarter” in the certificate of acknowledgment was a clerical mistake. The maxim
 
 “falso demonstratio non
 
 meet” applies. The proof in the case shows clearly where the plat was in fact located. As regards the statute, the plat was fatally defective and afforded no warrant to the recording officer for putting it on record. Nevertheless, its being there was a fact, and whether there or elsewhere, the reference to it in a deed for the purpose of fixing a boundary, is sufficient. “ That is- cértain which can be rendered certain.” Where a map or plat is thus referred to, the effect is the same as if it were copied into the deed. “ This is a familiar rule of construction, in all those cases wherein no other description is given in the title deeds, than the number of 'the lot on the Surveyor’s plan of a township or other large tract of land.”
 
 Davis
 
 vs.
 
 Rainesford,
 
 (l7 Mass., 211);
 
 McIver's Lessee
 
 vs.
 
 Walker et al.,
 
 (4 Wheat., 445).
 

 II. It is claimed that the deed is void because it was executed to convey lots designated upon a town plat not made in conformity to law, and which it was therefore, p.enal to sell.
 

 No lots are mentioned. The plat is referred to only for the purpose of boundary. The land with the boundaries is conveyed without reference to any subdivision. The fact .that it had been illegally laid out and platted into lots and streets does not in any wise affect the deed.
 

 III. It is objected that the deed from Prentiss to Church and Clark of August 4, 1847, in Lee's chain of title, and the deed from Church and Clark to Lee of July 7, 1848, were void, because they were made by grantors out of possession, when the premises were held adversely by other parties, under deeds apparently valid.
 

 At the dates of those deeds the Coltons were in possession under a deed of the 22d of June, 1847, from Janies H. Rogers.
 

 
 *505
 
 The only part of the description in that deed referring to the premises in controversy is as follows :
 

 " Twenty-two acres of land more or less undivided, in fractional lot number two of section four in township seven, range twenty-two, together w.'th one-half of the water power belonging to said fractional lot two, and also all the right, title and interest of the said parties of the-first part in and to said lot two.”
 

 A title to twenty-two acres undivided would have given the grantee no right to take exclusive possession of the mortgage premises. So far as the record discloses the facts, it appears that Rogers claimed entirely under sales for taxes. It will presently appear that they gave him no title, real or apparent which he could convey to another.
 

 IV. The tax deeds.'
 

 It is not denied that at the time Lee conveyed to Noonan, his chain of title was perfect, unless it was broken by one or more of the facts claimed by Noonan to have produced that effect. In this connection the tax deeds found in the record are relied upon. They consist of Exhibits C, D, E, E, G-, H, I, J, and the deed to Orton of the 25th of April, 1852.
 

 (1). The deed last named does not appear to have been recorded. Possession under it can therefore have no effect upon the rights of Lee. The description in the deed does not cover the premises in controversy. That part of the description relied upon is in these words: -
 

 "Part of the S. E. quarter section fourth, T. 7, R. 22, bounded north by Demster, east by Jones and Bare, west by river, and south by Allerdmg, (nineten acres).”
 

 The land in controversy is not in
 
 the southeast quarter
 
 of the section, and there is nothing in the case which shows what river is referred to, or where the lands of Demster and the other parties named are situated.
 

 (2). Exhibit F, I, and J, are duplicates respectively of Exhibits H, C, and E, and may be laid out of view.
 

 (3). Exhibits C, D, and Gr, embrace none of the land in controversy. This leaves only Exhibits E and H to be examined.
 

 (1). Exhibit “E.”
 

 
 *506
 
 This is a deed to James H. Rogers. It bears date on the 17th of February, 1846. It recites a sale to Rogers on the 14th day of December, 1840, for the taxes of that year. The description embraces lots one and six in block five of the plat. This block is within the limits of the mortgaged premises. At the time of the sale, and for several years previous, Rogers had been in possession of the mortgaged premises under the deed of the 27th of July, 1887, from Prentiss, to whom he had given back a mortgage of the same date to secure the purchase-money. Prentiss had proceeded to foreclose the mortgage, and the premises were sold under a decree rendered on the 26th of June, 1840. Prentiss became the purchaser, ánd on the 5th of October, 1840, received the master’s deed for the premises.
 

 Rogers being in possession, the Statutes of Wisconsin required him to pay the taxes, and gave him an action to recover the money back, if he were entitled to it, from the party to whose benefit the payment enured. (Revised Statutes of 1839, sec. 14, p. 47.)
 

 His relation to the property, and to his vendor and mortgagee also, rendered it his duty to make such payment. Neither he nor any one claiming under him can avail himself of a title thus acquired, as against Prentiss and those claiming under him.
 
 Douglass
 
 vs.
 
 Dangerfield,
 
 (10 O. Rep., 152);
 
 Creps
 
 vs.
 
 Baird,
 
 (3 O. S. R., 377).
 

 (5). Exhibit “H.”
 

 This deed was also to James H. Rogers, and bears date on the 23d of December, 1845. It recites that the sale was made to Rogers on the 9th of December, 1839, for the taxes of that year.
 

 It embraces lots 1, 2, 3, 4, 5, and 6, in block 5, as delineated on the plat. During all of the year 1839, Rogers was in posses sion as .the vendee of Prentiss, and the same remarks apply as to Exhibit “E.”
 

 Underlying these deeds is another objection.
 

 We have already referred to the non-conformity of the town plat to the requirements of the statute, and the fact that it was penal to sell or lease any lot, as such, which it represented All the witnesses, including Orton, who-claimed to be in posses
 
 *507
 
 a ion of the whole of fractional lot 2, speak of it as a “pretended plat.” Orton says:
 

 “I do hot know'of such a village as Mechanicsville in,fact, though I have heard of it. I do not know where the plat of Mechanicsville is located, though I know where they claim it is located. I know the land described in the mortgage in the bill of complaint from its boundaries.”
 

 It does not appear in the case that any street was ever improved, that any lot was' ever enclosed, or that any house was ever built with reference to the boundaries of any street or lot. It comes out incidentally in the evidence touching possession, that there is but one house on the plat, and that it is in a ruin - ous condition and unoccupied. Nothing is proved
 
 in pais,
 
 recognizing the existence of the plat.
 

 Under these circumstances it may well be doubted whether the sales of lots for taxes were not illegal and void.
 
 Wheeler
 
 vs.
 
 Russell,
 
 (17 Mass., 258);
 
 Strong
 
 vs.
 
 Darling et al.,
 
 (9 O. Rep. 201).
 

 We have not found it necessary to decide that question, and we express no opinion upon the subject.
 

 As the facts are disclosed in the record,
 
 we
 
 find no defect in the title of Lee. We find that Noonan’s title has .not “failed,” and no encumbrance upon the property is shown. There has been, therefore, no breach of the agreement endorsed upon the bond; ,nor lias there been any breach of the covenant of general warranty in Lee’s deed to Noonan. The deed contains no other covenant. The Statute of Wisconsin of 1849 permits a grantor out of possession to.make a valid conveyance of lands adversely held by another. In all cases where there is adverse possession, by'virtue of a paramount title, of lands thus conveyed, such possession is regarded as eviction, and involves a breach of the covenant of warranty. Where, as . in this case, the paramount title is in the warrantor and the adverse possession tortious, it is no eviction either actual or constructive, and no action will lie upon the covenant.
 
 Randolph
 
 vs.
 
 Meek,
 
 (1 Martin & Yerger, 58);
 
 Moore
 
 vs.
 
 Vail,
 
 (17 Ill., 185); Rawle on Covenants of Title, 224)
 

 
 *508
 
 There is another view of this case which must not be passed over in silence.
 

 It is not claimed by Noonan in his answer that there was any fraud or misrepresentation on the part of Lee, or that any fact exists in regard to the title which was unknown to him when he bought the propertju It appears by the testimony of Orton, that there was a controversy between him and Noonan about water power, and that it has been adjusted. Orton says: “He” (Noonan) “has no interest with me in this land
 
 of record.
 
 I don’t
 
 know
 
 that he has any.” “ I
 
 dorit know
 
 that I have any interest in the result of this suit. I
 
 dont know
 
 that I will be benefitted in any way by Noonan’s success in this suit.” This is guarded and peculiar language. It is impossible to read the testimony of Orton and resist the conclusion that Noonan bought the property for a purpose, and that having held the title for several years without paying anything, and accomplished that purpose, he is now seeking, upon the pretence of defects of title, finally to avoid the payment of the purchase money, and throw back the property upon the hands of his vendor; This ungracious work a Court of Equity will not permit him to do. .
 

 If Noonan had gone into possession, and continued in possession under his deed from Lee, this elaborate examination of the state of the title would not have been necessary. With reference to that class of cases, this Court, in
 
 Patton
 
 vs.
 
 Taylor,
 
 (7 How., 159), after referring to numerous authorities, thus laid down the law:
 

 “ These cases will show that a purchaser in the undisturbed possession of the land will not be relieved against the payment of the purchase money, on the mere ground of defect, of tit'e there being no fraud or misrepresentation, and that in such a case he must seek his remedy at law on the covenants in his deed. That if there is no fraud and no covenants to secure the title, he is without remedy, as the vendor selling in good faith is net responsible for the goodness of his title beyond the extent-of his covenants in the deed. And that further relief will not be afforded upon the ground of fraud, unless it be made a dia
 
 *509
 
 tinct allegation in the bill, so that it may be put in issue by the pleadings.”
 

 This doctrine is fully sustained by the best considered authorities.
 
 Corning
 
 vs.
 
 Smith,
 
 (2 Seld., 84);
 
 Plat
 
 vs.
 
 Gilchrist,
 
 (3 Sandf. S. C. Rep., 118);
 
 Butler
 
 vs.
 
 Hill,
 
 (6 Ohio S. R., 217);
 
 Beebe
 
 vs
 
 Swartout,
 
 (3 Gilman, 162).
 

 The proofs in this case show, that before filing his bill, Lee notified Noonan, that he elected to consider the entire amount of the mortgage debt as due. This entitled him to a decree for the full amount, although according to the terms of the bond, one of the instalments was not due when the bill was filed.
 
 Noyes
 
 vs.
 
 Clark,
 
 (7 Paige, 180).
 

 It remains to consider that part of the decree which directs Noonan to pay the balance which may remain unsatisfied after exhausting the proceeds of the mortgaged premises.
 

 The equity jurisdiction of the Courts of the United States is derived from the Constitution and Laws of the United States. Their powers and rules of decision are the same in all the States. Their practice is regulated by themselves, and by rules established by the Supreme Court. This Court is invested by law with authority to make such rules. In all these respects they are unaffected by State legislation.
 
 Neves
 
 vs.
 
 Scott,
 
 (13 How., 270);
 
 Boyle
 
 vs.
 
 Zachary Turner,
 
 (6 Pet., 658);
 
 Robinson
 
 vs.
 
 Campbell,
 
 (3 Wheat., 323).
 

 A majority of my brethren are of the opinion, and I am directed by them so to announce, that in the absence of a rule of this Court authorizing it to be done, it was not competent for the Court below to make such an order.
 

 That part of the decree is reversed. The residue is affirmed. The cause will be remanded to the Court below with instructions to proceed accordingly.