## PETERS *v.* BOWMAN.

1. In a suit to enforce a lien for the purchase-money, where there has been no fraud and no eviction, actual or constructive, the vendee, or the party in possession of the lands under him, cannot controvert the title of the vendor.

2. A party claiming the lands by an adverse title cannot be permitted to bring it forward, and have it settled in that suit.

3. The vendee and those claiming under him must rely on the covenants of title in the deed of the vendor: if there be none, there is, in the absence of fraud, no redress.

APPEAL from the District Court of the United States for the Northern District of Mississippi.

The facts are stated in the opinion of the court.

*Mr. James R. Chalmers* and *Mr. Mike L. Woods* for the appellant.

*Mr. H. T. Ellett, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

This is a bill to enforce a lien upon real estate situate in Tunica County, in the State of Mississippi. Bowman owned the premises in fee-simple, and sold the undivided half to

Bostick, and gave him a written contract, valid in equity, but not sufficient to pass the legal title.

Bostick died in 1868, possessed of property in Mississippi and Tennessee, and leaving a last will and testament.

By one of the clauses he appointed Gwinn his executor in Mississippi, and the appellee, Elliott, his executor in Tennessee.

By another clause he authorized the Mississippi executor to lease or cultivate the premises in question with Bowman, and finally, under the circumstances named, " to join the said Bowman in making sale and title to the purchasers."

By another clause, after the payment of all legacies, debts, and expenses of administration, he gave to three persons, whom he named, and their successors, as trustees, the entire residue of his estate, " to be invested by them in a suitable site and buildings for a female academy " in Tennessee, and to be otherwise devoted to that institution.

Gwinn died in the lifetime of the testator.

On the 11th of January, 1869, the Probate Court of Tunica County granted " letters testamentary of the said last will and testament " to Elliott.

On the 25th of January, 1869, Elliott, describing himself as " executor of the last will and testament of J. Bostick, acting under the powers conferred by said will," and Bowman, united in a conveyance with full covenants to the four brothers, Jaquess, for the consideration of $4,000, paid in cash, and the further sum of $24,000, for which four notes were given by the vendees, each for the sum of $6,000, and payable respectively on the first day of January in the years 1870, 1871, 1872, and 1873, with interest at the rate of six per cent per annum.

In reference to these notes the deed contains the following provision : " And to secure the payment of each and all of which said notes and interest an express lien is hereby retained by the parties of the first part upon the real estate and premises " in question.

The note maturing on the 1st of January, 1870, was paid by the Jaquess Brothers.

On the 26th of January, 1870, they sold and conveyed the premises to the appellant, Peters, for the consideration ex-

pressed in the deed of the sum of $11,920 cash in hand, "and the assumption by the said Peters of the payment of three promissory notes for $6,000, made by the first parties (Jaquess Brothers), and payable to Elliott and Bowman, for the same land herein conveyed."

This deed contains a covenant of the right to convey, of seisin, and of general warranty.

The covenant of good right to convey is synonymous with the covenant of seisin. The actual seisin of the grantor will support both, irrespective of his having an indefeasible title.

These covenants, if broken at all, are broken when they are made. They are personal, and do not run with the land. *Marston* v. *Hobbs*, 2 Mass. 432; *Greenby & Kellogg* v. *Wilcocks*, 1 Johns. (N. Y.) 2; *Hamilton* v. *Wilson*, 4 id. 72.

Peters put his co-defendants, General Chalmers and wife, in possession of the premises, under an arrangement whereby, when they should pay the balance of the purchase-money, he would convey to Mrs. Chalmers. Their possession has since continued, and has been undisturbed.

On the 8th of November, 1869, the same Probate Court granted letters of administration "upon the estate of J. Bostick, deceased, with the will of said Bostick annexed," to Elliott, upon his giving a sufficient bond and taking the oath prescribed by law, both of which were then done.

The original bill was filed on the 28th of February, 1873, to enforce the lien reserved in the deed of Elliott and Bowman to Jaquess Brothers, to secure the notes given for the purchase-money, the three last of which are wholly unpaid.

On the 31st of July, 1874, Elliott, to obviate objections made to the prior deed, executed a second deed to the Jaquess Brothers for the same premises. In this deed he describes himself as "administrator with the will annexed of said Bostick," &c.

The deposition of Elliott shows that Bostick never had any title to the premises but what he derived from his contract with Bowman; that Bowman, after Bostick's death, insisted upon selling, and hence the sale to the Jaquess Brothers.

The court below decreed in favor of the complainants. Peters brought the case here for review.

There is no controversy about the leading facts of this case.

The questions presented are all questions of law. Bowman had the legal title to the entire premises, and that title he conveyed to Jaquess Brothers, and they conveyed it to Peters. The deed of Elliott and Bowman contained all the usual covenants of title. The covenant of warranty ran with the land, and passed by assignment to Peters. The deed of the Jaquess Brothers produced that result. In the event of a failure of title, Peters can sue upon this covenant in either deed. *King* v. *Kerr's Adm'r*, 5 Ohio, 154. When broken, it becomes a chose in action, but a subsequent grantee may sue the warrantor in the name of the holder. There can be but one satisfaction. Id. A sheriff's or a quitclaim deed will carry the covenant before its breach to the grantee. *White* v. *Whitney*, 3 Metc. (Mass.) 81; *Hunt* v. *Amidon*, 4 Hill (N. Y.), 345.

Where at the time of the conveyance with warranty there is adverse possession under a paramount title, such possession is regarded as eviction, and involves a breach of this covenant. Where the paramount title is in the warrantor, and the adverse possession is tortious, there is no eviction, actual or constructive, and no action will lie. *Noonan* v. *Lee*, 2 Black, 499; *Duval* v. *Craig*, 2 Wheat. 45. Here there is no adverse possession, and no eviction, actual or constructive; nor does it appear that suit has been threatened, or that an adverse claim has been set up by any one. The possession and enjoyment of the property by General Chalmers and his wife have been the same as if their title were indisputable. It is insisted that the first deed of Elliott was fatally defective, because the letters from the Probate Court, under which he acted in making it, were issued to him as executor, and that both deeds were void, because under the will and the circumstances there was no authority to sell; and, lastly, because the residuum of the estate of the testator, including proceeds of the premises in question, was disposed of in a way forbidden by a law of the State of Mississippi.

We prefer to rest our judgment upon a ground independent of all these points, and which renders it unnecessary to examine them.

It is the settled law of this court that upon a bill of foreclosure, or, as in this case, a bill to enforce a lien for the pur-

chase-money, and where there has been no fraud and no eviction, actual or constructive, the vendee, or a party in possession under him, cannot controvert the title of the vendor; and that no one claiming an adverse title can be permitted to bring it forward, and have it settled in that suit. Such a bill would be multifarious, and there would be a misjoinder of parties. *Noonan* v. *Lee, supra; Dial* v. *Reynolds*, 96 U. S. 340. In such cases, the vendee and those claiming under him must rely upon the covenants of title in the deed of the vendor. They measure the rights and the remedy of the vendee; and if there are no such covenants, in the absence of fraud, he can have no redress. This doctrine was distinctly laid down in *Patton* v. *Taylor*, 7 How. 159, and was re-examined and affirmed in *Noonan* v. *Lee.* See also *Abbott* v. *Allen*, 2 Johns. (N. Y.) Ch. 519; *Corning* v. *Smith*, 6 N. Y. 82; *Beebe* v. *Swartwout*, 8 Ill. 162. That the vendor is insolvent or absent from the State, or that an adverse suit is pending which involves the title, does not withdraw the case from the operation of this principle. *Hill and Wife* v. *Butler*, 6 Ohio St. 207; *Platt* v. *Gilchrist*, 3 Sandf. (N. Y.) 118; *Latham* v. *Morgan & Fitz*, 1 Smed. & M. (Miss.) Ch. 611.

The rule is founded in reason and justice. A different result would subvert the contract of the parties, and substitute for it one which they did not make. In such cases the vendor, by his covenants, if there are such, agrees upon them, and not otherwise, to be responsible for defects of title. If there are no covenants, he assumes no responsibility, and the other party takes the risk. The vendee agrees to pay according to his contract, and secures payment by giving a lien upon the property. Here it is neither expressed nor implied that he may refuse to pay and remain in possession of the premises, nor that the vendor shall be liable otherwise than according to his contract.

Where an adverse title is claimed, it cannot be litigated with binding effect, unless the claimant is before the court. We have shown that he cannot be made a party. One suit cannot thus be injected into another. Without his presence, the judgment or decree as to him would be a nullity. The law never does or permits a vain thing.

A title which cannot be made good otherwise may be made so by the lapse of time or the Statute of Limitations. Is the vendor to wait until this shall occur? and, in the mean time, can the vendee, or those claiming under him, remain in possession and enjoy all the fruits of the contract, and pay neither principal nor interest to the vendor?

Chancellor Kent well says, "It would lead to the greatest inconvenience, and perhaps abuse, if a purchaser in the actual possession of land, and when no third person asserts or takes any measures to assert a hostile claim, can be permitted, on a suggestion of a defect or failure of title, and on the principle of *quia timet*, to stop the payment of the purchase-money, and of all proceedings at law to recover it." *Abbott* v. *Allen, supra.*

*Decree affirmed.*