LANE v. EQUITABLE TRUST CO. OF NEW YORK. *

(Circuit Court of Appeals, Eighth Circuit.   November 24, 1919.)

No. 5381.

1. RAILROADS ⬤⟿191—MORTGAGE TRUSTEE ENTITLED TO DEFICIENCY DECREE.

The trustee in a railroad trust deed held entitled to a deficiency decree under equity rule 10 (198 Fed. xxi, 115 C. C. A. xxi), where the proceeds of the mortgaged property sold under foreclosure decree were insufficient to pay the mortgage debt, and the trust deed expressly authorized the trustee to collect any deficiency in its own name.

2. MORTGAGES ⬤⟿559(5)—SUPPLEMENTARY DECREE FOR DEFICIENCY, WHERE DEFICIENCY LIABILITY ADJUDGED IN PRINCIPAL DECREE NOT APPEALED FROM.

Where a foreclosure decree, ordering sale of mortgaged property, provided that in case of deficiency the amount 'should be reported by the master, and complainant, trustee in the mortgage, should be entitled to judgment therefor, from which decree no appeal was taken, a deficiency decree subsequently entered pursuant thereto held not subject to attack by an unsecured creditor of mortgagor.

3. MORTGAGES ⬤⟿559(5)—SUFFICIENCY OF PLEADING TO SUPPORT DEFICIENCY DECREE.

A prayer for general relief in a bill for foreclosure of a mortgage held broad enough to authorize a deficiency judgment.

4. CORPORATIONS ⬤⟿642(7)—SUIT BY FOREIGN CORPORATION NOT "DOING BUSINESS IN STATE."

Bringing suit by a foreign corporation as trustee to foreclose a mortgage on real estate situated in the state of suit does not constitute "doing business" in that state.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 251 U. S. ——, 40 Sup. Ct. 344, 64 L. Ed. ——.

**5. COURTS ⬤⟲343—PARTIES ON FORECLOSURE IN FEDERAL COURT NOT CONTROLLED BY STATE STATUTE.**

Rev. St. Mo. 1909. § 2859, requiring foreign trustees bringing suit to foreclose a trust deed on property in that state to join a resident trustee as plaintiff, cannot control suits brought in a federal court.

**6. RAILROADS ⬤⟲196—REORGANIZATION BY CONTRIBUTING STOCKHOLDERS AND BONDHOLDERS PURCHASING AT FORECLOSURE SALE DOES NOT CONSTITUTE PAYMENT OF BONDS.**

That under a plan of reorganization stockholders and bondholders of the old railroad corporation, who contributed cash for the purchase of its property at foreclosure sale, were to receive stock and bonds of the new company, does not raise any presumption that the property was worth more than the price it sold for, or that the bonds secured were to be considered paid in full.

Stone, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Missouri; Walter H. Sanborn, Judge.

Suit by the Equitable Trust Company of New York against the Wabash Railroad Company and James B. Forgan. From a deficiency decree, Rome Lane appeals. Affirmed.

Wells H. Blodgett and Clifford B. Allen, both of St. Louis, Mo., for appellant.

Theodore Rassieur, of St. Louis, Mo. (George Welwood Murray and Lawrence Greer, both of New York City, of counsel, and Murray, Prentice & Howland and Pierce & Greer, all of New York City, and Jourdan, Rassieur & Pierce, of St. Louis, Mo., on the brief), for appellee.

Daniel N. Kirby, of St. Louis, Mo. (Nagel & Kirby, of St. Louis, Mo., on the brief), for Wabash Ry. Co., by leave of Court.

Before STONE, Circuit Judge, and MUNGER and YOUMANS, District Judges.

YOUMANS, District Judge. On January 30, 1914, a decree of foreclosure upon a deed of trust was entered in the case of Equitable Trust Company of New York v. Wabash R. R. Co. and James B. Forgan. The property of the railroad company covered by the deed of trust was ordered sold, and sale of the property was accordingly made. The amount realized from the sale was not sufficient to pay the indebtedness secured by the deed of trust. On March 8, 1918, the Equitable Trust Company filed a motion under equity rule 10 (198 Fed. xxi, 115 C. C. A. xxi) for a deficiency judgment against the railroad company. The appellant, an unsecured creditor of the railroad company, on behalf of himself and other unsecured creditors, resisted the motion.

The pleading filed by appellant is summarized in the brief filed by his counsel, as follows:

"(a) That it was true, as alleged in said petition, that the amount realized from the sale of said mortgaged property was not sufficient to pay the amount due as principal and interest of said bonds.

"(b) That the matters set forth and alleged in the foreclosure bill of the

Equitable Trust Company were not sufficient to entitle said trust company to a personal judgment against said Wabash Railroad Company for any deficiency.

"(c) That said foreclosure decree was entered January 30, 1914, and that a sale thereunder was had July 22, 1915; that at the instance of said trust company the receivers under said foreclosure bill were discharged on the 18th day of September, 1916, and that by the consent and procurement of said trust company all the unmortgaged property and assets of the Wabash Railroad Company were taken over and transferred by said receivers to the new Wabash Railway Company, and that no steps were taken by said Equitable Trust Company to procure a deficiency judgment until after proceedings had been instituted by general creditors for an accounting and recovery of the trust funds wrongfully diverted as aforesaid at the instance of said trust company, and that said trust company was in equity now estopped from having and recovering a deficiency judgment for any sum whatever.

"(d) That under the plan of the bondholders and stockholders of said Wabash Railroad Company for the foreclosure of said mortgage and a sale of the mortgaged property under a foreclosure decree, and the purchase thereof by a committee representing said stockholders and bondholders (as shown by the record, folio 289), all claims and demands of the holders of said bonds and of said Equitable Trust Company as trustee against said Wabash Company on account of said bonds were fully satisfied and discharged."

The issue presented by the motion and answer was submitted upon the following stipulation:

"It is hereby stipulated and agreed between the parties hereto as follows:

"(1) That the paper hereto attached, marked 'Exhibit A,' and entitled 'Wabash Railroad Company, Plan and Agreement of Reorganization,' dated April 28, 1915, is a true and correct copy of said plan and agreement of reorganization, and is made a part of the record in this proceeding with the same force and effect as the original copy of said plan and agreement of reorganization.

"(2) That the paper hereto attached, marked 'Exhibit B,' and entitled 'The Wabash Railroad Company Joint Reorganization Committee,' dated January 26, 1916, is a true and correct copy of the final report of said joint reorganization committee, made to the board of directors of the Wabash Railway Company, and is made a part of the record in this cause with the same force and effect as the original copy of said final report.

"(3) That the paper hereto attached and marked 'Exhibit C' and entitled 'Method 5' is a correct computation, made by Thomas J. Tobin, of interest on the principal of the first refunding and extensions mortgage bonds, and on the accumulated interest as provided in paragraph 10 of the foreclosure decree by the method as stated upon said exhibit. Said exhibit is hereby made a part of the record in this cause.

"(4) It is agreed that the court may refer to and use in this proceeding bound volumes I and II of the printed record of the various proceedings in the Wabash receivership cases, entitled 'Record of Wabash R. R. Co. Receivership.'

"It is further agreed that all or any part of the orders, petitions, decrees, or other documents set forth in said printed volumes, and referred to in this proceeding by either party hereto by appropriate references, may be considered and used by either party making reference to the same as a part of the record in this cause."

[1] I. The first ground urged by counsel for appellant is that equity rule 10 does not authorize the entry of a deficiency judgment in favor of a trustee to whom the defendant is not indebted. In support of this contention reliance is placed upon the case of Mackay v. Randolph-Macon Coal Co., 178 Fed. 881, 102 C. C. A. 115, decided by this court. In that case a deficiency judgment had been taken by a trustee for bondholders under a deed of trust. The defendant corporation had been adjudged a bankrupt, and the remainder of its estate was being

administered in the bankruptcy court in the Eastern district of Missouri. With the intention of having the trustee in bankruptcy bring suit in the state of New York against the stockholders of the bankrupt for unpaid subscriptions to stock, the trustee for the bondholders presented his deficiency judgment for allowance in bankruptcy. In the statement of facts Judge Amidon, speaking for the court, said:

"The only claim proven in bankruptcy is the deficiency decree, and the trustee in bankruptcy would, of course, have no higher right than the holder of that claim. Being apprehensive that the trustee under the mortgage might not be a 'creditor' of the corporation who would be entitled to maintain the suit against stockholders for their unpaid subscriptions, holders of the bonds secured by the mortgage made due proof of the same before the referee, and asked that they be allowed as claims against the estate. The referee, being of the opinion that the bonds had been merged in the deficiency judgment, disallowed the claims, and his ruling was affirmed on appeal to the District Court. The bondholders seek a review of that action by the present appeal."

The only question before the court was whether each separate bond was merged in the deficiency judgment, so as to prevent a separate allowance in bankruptcy on the bond. On that point the court said (178 Fed. 884, 102 C. C. A. 118):

"It is manifest that the appeal turns mainly upon the question whether the cause of action arising out of the bonds was merged in the deficiency decree. Both merger and res adjudicata lie in the same field. They are not, however, identical. A point may become res adjudicata as to one cause of action in a suit upon an entirely independent cause of action between the same parties, if it has been there directly litigated. Merger, on the contrary, cannot result unless the causes of action in the two suits are identical."

The court said also:

"As between the parties to the foreclosure suit, the deficiency decree is, of course, conclusive of every fact necessary to support the decree. It forecloses inquiry as to whether the court had authority to enter a deficiency judgment. Hatcher v. Hendrie, etc., Supply Co., 133 Fed. 267, 272, 68 C. C. A. 19. But the suit against the stockholders is not between the parties to the foreclosure action. It is pending in the state of New York. By the decisions of the highest court of that state it is doubtful whether a judgment against a corporation is more than prima facie evidence of the creditor's debt in a suit against stockholders. Cook on Corporations, §§ 209 and 224. If that should be the holding of the court in the action of the trustee in bankruptcy against the stockholders of this corporation, the defense would be open to them that the trustee under the mortgage had no right whatever except to enforce the security, and was in no sense a creditor of the corporation. The peculiar language of the covenant in the mortgage, to say the least, gives color to such a defense.

"The principle of merger has its foundation mainly in the maxim: 'Nemo debet bis vexari pro una et eadem causa.' That maxim has no application to the facts of this case. No one could possibly be vexed by costs or litigation through the allowance of the bondholders' claims. No costs could accrue, and it was not necessary to summon any person to the hearing of the claims. Another reason that has guided courts in barring a second action for the same cause is that the judgment already entered affords to the plaintiff all the judicial aid that could be obtained from a second judgment. In the present case there is good reason for saying that the allowance of the bondholders' claims would furnish the trustee in bankruptcy a much better basis than the deficiency decree for his suit against the stockholders. The claims could have been allowed without the possibility of injury to others. The referee had full power, both by his order and his subsequent control over the administration of the estate, to safeguard all interests from any prejudice from the allowance of both claims.

"The whole case is therefore reduced simply to this: Should the court of bankruptcy have aided these creditors by removing one of the apprehended dangers from their pathway, when it could have done so without the slightest cost or prejudice to any one? The reason of the rule which it thought deprived it of the power to grant the aid was wanting in this case, and we think the rule itself, even if otherwise applicable, should not have been enforced."

It was not held in that case that the deficiency judgment was invalid. It was held that the doctrine of merger did not apply. It is true that language was used in that opinion which went beyond the point involved in the case, as stated in the opinion, but "the language of the opinion cannot be separated from the facts of the case." Coca-Cola Co. v. Moore, 256 Fed. 640, 643, —— C. C. A. ——.

The case of In re A. J. Ellis, Inc. (D. C.) 242 Fed. 156, is also cited by counsel for appellant as sustaining their contention. That case arose in the state of New Jersey. The question involved was the right of the trustee for bondholders in a deed of trust to prove a deficiency judgment against a bankrupt corporation. The referee in bankruptcy refused to allow the claim. Upon petition for review the District Court said:

"In New Jersey, a separate suit at law upon the bond is necessary to secure judgment for deficiency in the foreclosure of mortgages."

The court then quoted the sections of the statute of New Jersey making that requirement. The court then in its opinion proceeds to say:

"The cause of action arising out of the bonds in this case was not merged in the deficiency decree. The trustee could not prosecute a separate action at law upon the bonds in order to secure a deficiency judgment; neither can it prove this deficiency claim, which, however, need not be reduced to judgment in order to be proved. In re McAusland (D. C.) 235 Fed. 173. There is some authority in apparent conflict with the conclusion herein reached (Grant v. Winona, etc.. S. W. R. R. Co., 85 Minn. 422, 89 N. W. 60; Laing v. Queen City Ry. Co. [Tex. Civ. App.] 49 S. W. 136), yet the decisions in those cases are explained in part, at least, by the provisions contained in the mortgage and the provisions of the statute in those jurisdictions. A deficiency decree in those jurisdictions may be entered in the foreclosure proceedings."

The court distinguished the practice in New Jersey from the practice in other states.

Counsel for appellant in their brief say that the above case was affirmed by the Court of Appeals of the Third Circuit in 252 Fed. 483, 164 C. C. A. 399. While that is true, a careful reading of the opinion of the court discloses that the question of the allowance of the deficiency judgment was not considered. With reference to the facts in that case the court said:

"The undisputed facts are as follows: In June, 1910, the bankrupt, A. J. Ellis, Incorporated, executed 200 bonds, each for $500, to the New Jersey Title Guarantee & Trust Company as trustee for the future holders. The bonds were 10-year 6 per cent. obligations, interest and principal payable at the trustee's office in Jersey City, and were secured by a mortgage on real and personal property. If certain specified defaults should occur, the trustee was bound to foreclose if two-thirds of the bonds should so request. Default did occur, the request was made, and in May, 1915, the company filed a foreclosure bill in the state chancery. At this time the bankruptcy proceeding was in progress—the adjudication had been entered in March—and Mc-

Burney, the trustee in bankruptcy, was made one of the defendants in the bill by permission of the District Court. There was no defense, and in October all the mortgaged property was sold for $50,000. As the decree had been for more than $86.000, with interest, and, as certain costs and fees had also accrued, the result was that the sale left nearly $38,000 of the mortgage debt unpaid. A deed for the property was made in December, 1915, and a month later the trust company on behalf of the bondholders filed a claim in bankruptcy for the deficiency. McBurney objected, and in October the referee disallowed the claim; his disallowance being affirmed by the District Court on April 27, 1917. 242 Fed. 156. From this order the first appeal now before us was taken by the trust company.

"The claim was rejected on the ground that it should have been made by the bondholders themselves and in their own names, and accordingly on April 30 a petition to amend the claim was filed by William J. Sloane and Babette Mohler, who held all the outstanding bonds, except eight; these being unrepresented in the proceedings, both below and in this court. The petitioners averred inter alia that after the foreclosure sale a deficiency of $230.04 existed on each bond, and that they had requested and instructed the trust company to act as their agent to prove their claim against the bankrupt estate for such deficiency, that the company had proved on behalf of all the bondholders, and that the petitioners had ratified and did ratify whatever the company had done as their agent, praying leave to amend the proof so as to make it a direct claim by William J. Sloane and Mrs. Mohler upon the bonds held by them respectively. The District Court allowed the amendment, and the second appeal is from this order."

It is thus seen that two appeals were taken, one on the refusal to allow the deficiency judgment, and the other on the question of allowing two bondholders, who held all outstanding bonds except eight, to amend the proof theretofore made by the trustee in the deed of trust, so as to make it a direct claim by the two bondholders on the bonds held by them respectively. On these two points the Court of Appeals said:

"We need not consider the question raised by the first appeal. The only bondholders on this record are the two just named, and if they were properly allowed to adopt the trust company's claim already on file the company's appeal becomes academic. We think Judge Davis was right in allowing the amendment. The claim set forth all the facts with particularity, and expressly stated that the company was acting for the bondholders. Every one knew the facts and was aware that the company did not own the bonds and could not benefit by the balance still due on the mortgage debt. Whether it had a formal legal right to use its own name while collecting the money for the bondholders was a matter of dispute; if it had, the bondholders did not need to file individual claims, and we see no reason why they might not safely wait until that question should be finally decided. In re Standard Co. (D. C.) 186 Fed. 586. Instead of waiting, however, the bondholders assumed that the company might be wrong, and (pending the final decision) took steps to amend the claim, thus acquiring the second string for their bow. Save in the disputed point, the company's proof was complete; the objection made to it was wholly based on a rule of procedure, and had no support in the merits, for the balance was undoubtedly due to the bondholders, and the company had authority to make the claim as agent. The only mistake (if mistake it were) consisted in failing to set forth positively that the real creditors were themselves asserting their conceded right, and that the company was merely an agent."

The significant sentence in the foregoing quotation is the following:

"Save in the disputed point, the company's proof was complete; the objection made to it was wholly based on a rule of procedure, and had no sup-

port in the merits, for the balance was undoubtedly due to the bondholders, and the company had authority to make the claim as agent."

In the case at bar the taking of a deficiency judgment was expressly authorized and provided for in section 13, article 5, of the deed of trust, which section reads as follows:

"In case default shall be made in the payment of any interest on any bond hereby secured, or in case default shall be made in the payment of the principal of any such bond when the same shall become payable, whether at the maturity of said bonds, or by declaration as authorized by this indenture, or by a sale of the mortgaged premises as hereinbefore provided, then, upon demand of the trust company, the railroad company agrees and covenants that it will pay to the trust company, for the benefit of the holders of the bonds and coupons hereby secured then outstanding, the whole amount which shall then be due and payable on all such bonds and coupons for principal or interest, or both, as the case may be, with interest upon the overdue principal and installments of interest; and, in case the railroad company shall fail to pay the same forthwith upon such demand, the trust company, in its own name and as trustee of an express trust, shall be entitled to recover judgment for the whole amount so due and unpaid. The trust company shall be entitled to recover judgment as aforesaid before or after or during the pendency of any proceeding for the enforcement of the lien of this indenture upon the mortgaged premises, and the right of the trust company to recover such judgment shall not be affected by any entry or sale hereunder, or by the exercise of any other right, power, or remedy for the enforcement of the provisions of this indenture, or by the foreclosure of the lien thereof; and in case of a sale of the mortgaged premises and of the application of the proceeds of sale to the payment of the mortgage debt, the trust company, in its own name and as trustee of an express trust, shall be entitled to receive and to enforce payment of any and all deficiencies or amounts then remaining due and unpaid upon any and all of the bonds issued hereunder and then outstanding, for the benefit of the holders thereof, and shall be entitled to recover judgment for any portion of the mortgaged debt remaining unpaid, with interest. No recovery of any judgment by the trust company and no levy of any execution under any such judgment upon property subject to the lien of this indenture, or upon any other property, shall in any manner, or to any extent, affect or impair the lien of the trust company upon the mortgaged property, or any part thereof, or any rights, powers, or remedies of the trust company hereunder, or any rights, powers, or remedies of the holders of the bonds hereby secured, but such lien, rights, powers, and remedies shall continue unaffected and unimpaired as before. Any moneys thus recovered or collected by the trust company under this article, less the cost and expenses of collection and the reasonable compensation of the trust company, shall be applied by it towards payment to the holders of such bonds and coupons of the amounts due and unpaid upon such bonds and coupons respectively, such payment in every instance to be made ratably and without any preference or priority upon presentation of the respective bonds and coupons and indorsement of such payment thereon, if partly paid, or upon cancellation thereof, if paid in full."

[2] Appellant is not a bondholder. His interest is adverse to the interest of the bondholders. In the Randolph-Macon and Ellis Cases bondholders were asserting their right to maintain in their own names suits upon the bonds, instead of maintaining these suits in the names of their agents, the trustees in the deeds of trust. The attitude of appellant is not comparable with the attitude of the bondholders in those cases. Here appellant seeks to defeat the claims of the bondholders. He is not endeavoring to aid them in maintaining those claims.

Article 21 of the decree of foreclosure is as follows:

"Deficiency Judgment.

"It is further ordered, adjudged, and decreed that, in case the proceeds of such sale shall not be sufficient after the making of the other payments in article XVIII of this decree directed to be made, to pay in full the whole amount of the principal of said first refunding and extensions mortgage bonds, together with overdue interest thereon, and all other sums found by this decree to be due and owing, including receivers' certificates, then the said special master shall report to the court the amount of such deficiency, and, upon confirmation of said report, the complainant, as trustee under said first refunding and extensions mortgage, shall be entitled to have judgment against the defendant the Wabash Railroad Company for the amount of the deficiency, and shall have execution therefor, pursuant to the rules and practice of this court."

It thus appears that a deficiency judgment was expressly provided for in the deed of trust, that in the decree the special master was expressly directed to report the amount of the deficiency, if there should be one, and that the trustee should be entitled to have judgment for the amount of such deficiency. We think that rule 10 authorized a deficiency judgment in this case.

Moreover, the final decree of foreclosure was entered on January 30, 1914, and no appeal was taken therefrom. That decree declared the trustee was entitled to a judgment for the amount of the deficiency, if the proceeds of the sale should not be sufficient to pay the amount found due upon the bonds. The court had jurisdiction to enter this decree of foreclosure, whether this issue was decided wrong or right. It was not open to attack by the appellant, an unsecured creditor, at the time he made his objection. The amount of the deficiency was left for future determination, but the right of the trustee to recover it had been finally adjudicated.

[3] II. The next point urged by appellant is that the prayer of the original bill was not broad enough to warrant the rendering of the deficiency judgment. Assuming, without deciding or conceding, that appellant can raise that question, we are of opinion that there is no merit in this contention. The prayer of the bill was for general relief, and we think that such a prayer is sufficient to authorize the rendition of a deficiency judgment. Seattle, L. S. & E. Ry. Co. v. Union Trust Co., 79 Fed. 179, 188, 24 C. C. A. 512; Shepherd v. Pepper, 133 U. S. 626, 10 Sup. Ct. 438, 33 L. Ed. 706; Northwestern Mutual Life Insurance Co. v. Keith, 77 Fed. 374, 23 C. C. A. 196; Ramsden v. Keene, 198 Fed. 807, 117 C. C. A. 449; Kansas City Southern Ry. Co. v. Guardian Trust Co., 240 U. S. 166, 178, 36 Sup. Ct. 334, 60 L. Ed. 579.

[4] III. The next point urged by counsel for appellant is that appellee, being a trust company organized under the laws of New York, could not bring and maintain a suit to foreclose a deed of trust on real estate in the state of Missouri. The suit for foreclosure did not constitute doing business in the state of Missouri. Frick Co. v. Marshall, 86 Mo. App. 463; Missouri Coal & Mining Co. v. Ladd, 160 Mo. 435, 61 S. W. 191; Meddis v. Kenney, 176 Mo. 200, 75 S. W. 633, 98 Am. St. Rep. 496; Broadway Bond Street Co. v. Fidelity Printing Co., 182 Mo. App. 309, 170 S. W. 394.

[5] IV. The next point urged by appellant is that section 2859 of the Revised Statutes of Missouri of 1909 provides that a foreign corporation or individual trustee cannot foreclose a deed of trust covering property in that state without joining a resident trustee as a party plaintiff. That requirement of the statute of Missouri cannot control the bringing of a suit in a United States court in that state by a foreign corporation. Barron v. Burnside, 121 U. S. 186, 7 Sup. Ct. 931, 30 L. Ed. 915; Butler Bros. Shoe Co. v. United States Rubber Co., 156 Fed. 1, 84 C. C. A. 167; Dunlop v. Mercer, 156 Fed. 545, 86 C. C. A. 435.

"It may not be doubted that the judicial power of the United States, as created by the Constitution and provided for by Congress, pursuant to its constitutional authority, is a power wholly independent of state action, and which therefore the several states may not by any exertion of authority in any form, directly or indirectly, destroy, abridge, limit, or render inefficacious. The doctrine is so elementary as to require no citation of authority to sustain it. Indeed, it stands out so plainly as one of the essential and fundamental conceptions upon which our constitutional system rests, and the lines which define it are so broad and so obvious, that, unlike some of the other powers delegated by the Constitution, where the lines of distinction are less clearly defined, the attempts to transgress or forget them have been so infrequent as to call for few cases for their statement and application." Harrison v. St. Louis & San Francisco R. R., 232 U. S. 318, 328, 34 Sup. Ct. 333, 335 (58 L. Ed. 621, L. R. A. 1915F, 1187).

[6] V. The next contention of counsel for appellant is that, under the plan of reorganization which preceded the sale under the foreclosure decree and by the adoption of such plan, the bonds were paid in full. The only evidence in the record on that point is the plan itself. It does not provide that the acceptance of the plan by the stockholders and bondholders of the railroad company shall constitute full payment of the bonds.

The plan provided for the raising of $27,720,000 in cash for the purpose of paying certain liabilities enumerated in the plan, amounting to that sum. The provision in the plan is as follows:

"The foregoing cash requirements are to be met, as hereinafter provided, by payments of $30 per share by the preferred and common stockholders of the present company (amount outstanding $92,400,000), which payments, so far as not made by the stockholders, are to be made by the holders of first refunding and extensions mortgage bonds, and are further to be underwritten by a syndicate .............................................$27,720,000."

Provision for unsecured creditors was made in the plan as follows:

"Unsecured creditors of the Wabash Railroad Company will be entitled under the plan to receive, in settlement and discharge of their claims duly presented and established, 25 per cent. thereof in convertible preferred stock B, at par, and 75 per cent. in common stock, at par, of the new company."

Terms and conditions were set out in the plan by which holders of general unsecured indebtedness against the railroad company might participate in the plan, if they desired to do so.

It cannot be said, because the stockholder in the old corporation thus acquired stock in the new, that a conclusive presumption, or any presumption at all, arises that the property was worth more than the price

it sold for at foreclosure sale and more than the mortgage debt. In the opinion in Kansas City Southern Ry. Co. v. Guardian Trust Co., 240 U. S. 178, 36 Sup. Ct. 337 (60 L. Ed. 579), reference is made to the fact "that reorganization plans often would fail if the old stockholders could not be induced to come in and contribute some fresh money," and the court further says, in that opinion, "that the necessity of such arrangements should lead courts to avoid artificial scruples."

The record in this case contains no testimony that would sustain the charge of fraud to hinder and delay the unsecured creditors. There is no testimony in the record to show that the property which passed under the foreclosure decree was worth more than the price it sold for. Appellant relies upon the plan of reorganization alone to sustain his contention. In our opinion that is not sufficient.

The decision of the lower court should be affirmed; and it is so ordered.

STONE, Circuit Judge (dissenting). I am unable to agree with the result reached by the majority of the court, because I think the trustee in this deed of trust had no authority or right to procure a deficiency decree. As to this contention, the position of appellee is that the terms of the mortgage created an express trust, investing the trustee with the specific power and duty of recovering such a deficiency decree for the benefit of all of the bondholders. To this appellant opposes the suggestions that the contract cannot enlarge the equity powers and jurisdiction of the District Court; that such powers, respecting mortgage deficiency decrees, exist only by virtue of equity rule 10; that equity rule 10 expressly limits such decrees to amounts "found due to the plaintiff," and that such language means amounts owing to plaintiff as a creditor of defendant.

The language of the mortgage intended is found in section 13, article 5, quoted in the majority opinion. The provision shows a clear intention and attempt to invest the trust company with full power to obtain a deficiency decree for all the bondholders; but it is evident that the jurisdiction of courts cannot be affected by contracts between private parties. It is true, however, that contracts may create legal relations between parties which place them within a jurisdiction which would not otherwise apply, and if the quoted portion of the deed of trust makes the trust company the trustee of the bonds for the bondholders, then it is a creditor of the mortgagor, and fully capable of enforcing payment, either through a deficiency decree or a separate suit. Therefore the questions here are: What is the jurisdiction of United States courts relating to deficiency decrees? and has the above provision of the deed of trust placed the trust company within that jurisdiction?

Prior to the adoption of old equity rule 92, now rule 10, there was no jurisdiction to enter a deficiency decree in a foreclosure suit. Noonnan v. Lee, 67 U. S. (2 Black) 499, 509, 17 L. Ed. 278; Orchard v. Hughes, 68 U. S. (1 Wall.) 73, 77, 17 L. Ed. 560. The existence and extent of such jurisdiction, therefore, depends upon the construction to be given that rule, which is as follows:

"In suits for the foreclosure of mortgages, or the enforcement of other liens, a decree may be rendered for any balance that may be found due to the plaintiff over and above the proceeds of the sale or sales, and execution may issue for the collection of the same, as is provided in rule 8 when the decree is solely for the payment of money."

This rule was adopted as a result of the two above decisions, and closely followed the latter, appearing in the same volume of the reports (page vii). Both of those cases were instances where the foreclosing mortgagee owned the entire debt secured by the mortgage. The language of that rule requires that the plaintiff, here the trustee, must be the one to whom the liability represented by the deficiency decree is "due." This court has decided that such a trustee, not owning the bonds, is not the one to whom such amount is due. Mackay v. Coal Co., 178 Fed. 881, 102 C. C. A. 115; also see In re Ellis (D. C.) 242 Fed. 156. I think that decision controlling and correct, for the reasons given therein. But in addition to what is there said there are the following considerations, which seem to me worthy of attention:

It must be assumed that in the carefully prepared rules of the Supreme Court every word was intended to have an effective meaning. The purpose of this rule was to permit recovery of deficiencies in foreclosure suits, and thus obviate the necessity of a separate action for that purpose. The court had in mind that the ordinary parties to such a foreclosure action would be the mortgagee or trustee and the mortgagor, and it had no intention of permitting persons, not parties to that suit, to obtain relief or to be bound by what was done therein. It therefore distinctly specified that deficiency decrees should go only for "any balance" found "due to the plaintiff." If this is not the proper construction of the rule, then the court meant nothing by the words "to the plaintiff," because those words can be eliminated and still leave a right to recover "for any balance that may be found due." The rule cannot be thus emasculated. Appellee recognizes that the balance must be due to "the plaintiff," and seeks to interpret the deed of trust as creating the trust company a trustee of this balance.

The mere statement in the deed of trust that the trustee is made "trustee of an express trust" does not create a trust, unless the relation so established contains elements essential to a trust. Was such a relation created by the language above quoted in the majority opinion from the deed of trust?

"A trust is where there are rights, titles, and interests in property distinct from the legal ownership." Seymour v. Freer, 8 Wall. 202, 213 (19 L. Ed. 306); also see 39 Cyc. 18, and citations.

"A trustee is not an agent. An agent represents and acts for his principal, who may be either a natural or artificial person. A trustee may be defined generally as a person in whom some estate, interest, or power in or affecting property is vested for the benefit of another." Taylor v. Davis, 110 U. S. 330, 334, 4 Sup. Ct. 147, 150 (28 L. Ed. 163).

A trustee is "the person who takes and holds the legal title to the trust property for the benefit of another." 39 Cyc. 19, also page 76, and numerous citations. It is thus evident that a trust cannot exist unless there are present three elements: A res, or subject to which

the trust attaches; a trustee, who holds the legal title for the benefit of another; and a cestui que trust, for whose benefit the legal title is held. Does this claimed trust possess these elements? I think not. What was the res, and what title was transferred to the alleged trustee? Clearly the property covered by the deed of trust was not the res, because this section of the mortgage applies only after that property has been exhausted and an unpaid residue left. No title to the bonds or to the unpaid residue is transferred to the trustee; that title in the bondholders is left complete and undisturbed. The attempted grant was solely and only that of a power to receive payment or to enforce payment. That this is true is emphasized by the provision that no such recovery by the trustee "shall in any manner, or to any extent, affect or impair * * * any rights, powers, or remedies of the holders of the bonds hereby secured, but such lien, rights, powers, and remedies shall continue unaffected and unimpaired as before." Again, there is no imperative obligation upon the trust company to seek enforcement beyond the realization upon the mortgaged property.

"The distinction between a power and a trust is marked and obvious. Powers, as Chief Justice Wilmot observed, are never imperative; they leave the act to be done at the will of the party to whom they are given. Trusts are always imperative, and are obligatory upon the conscience of the party intrusted." Stanley v. Colt, 5 Wall. 119, 168 (18 L. Ed. 502). Also see 39 Cyc. 22, and citations.

All that was here granted was a power or permission to bring a suit for the benefit of the bondholders. This makes nothing "due" the trustee in any proper legal sense of the word as used in rule 10.