**ADAMS et al. v. MISSOURI PAC. R. CO. et al.**

No. 11650.

Circuit Court of Appeals, Eighth Circuit.

May 8, 1940.

Rehearing Denied May 25, 1940.

Lee B. Ewing, of Nevada, Mo., and Leonard B. Ettelson and Erwin M. Treusch, both of Chicago, Ill., for appellants.

Russell L. Dearmont and Thomas T. Railey, both of St. Louis, Mo., for appellees.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from an order denying appellants' petition for a cash recovery on certain overcharge claims out of the proceeds arising from the sale of unmortgaged assets of the St. Louis, Iron Mountain and Southern Railway Company. The claims grew out of freight rate overcharges collected more than thirty years ago by the Missouri Pacific Railway Company and the St. Louis, Iron Mountain and Southern Railway Company. The order appealed from was entered in the Missouri Pacific Railroad Company reorganization proceedings.

A statement of the complicated facts making up the history of these claims, and their course through various judicial proceedings, would not only be lengthy but would serve no useful purpose. These claims were before us in Berthold-Jennings Lumber Co. v. St. Louis, Iron Mountain & Southern Railway Co., 8 Cir., 80 F.2d 32, 102 A.L.R. 688, where the facts forming their basis are related in some detail. Suffice it here to say that they resulted from the fact that the railroad companies secured a permanent injunction against the enforcement of certain Missouri legislative freight rates. Because of the decree of injunction based on a finding that the rates were void, the railroad companies continued to charge their own regular scheduled tariff rates, which were higher than the legislative rates. The Supreme Court finally reversed this decree (Knott et al. v. Railway Company, 230 U.S. 474, 33 S.Ct. 975, 57 L.Ed. 1571) and held the legislative rates valid and applicable.

In Berthold-Jennings Lumber Co. v. St. Louis, I. M. & S. Ry. Co., supra, these same claimants contended that they were entitled to be preferred over the secured creditors of the company and sought to have their claims paid in full. The lower court denied this contention. We affirmed the lower court's decision, and the Supreme Court denied certiorari. In sustaining the ruling of the lower court we held that these claimants had the status of general unsecured creditors. Following the decision in that case, the claims were liquidated and apportioned among the various claimants, so that there is now no question as to the amounts due. The claims in question are known as the Iron Mountain and Southern Railway undercharge claims. During the various proceedings, including a receivership, a mortgage foreclosure, and a reorganization,

it has been established and determined that the liability for these claims is one assumed by the Missouri Pacific Railroad Company.

Claimants bottom their right to payment in cash upon the contention that a deficiency judgment entered in a mortgage foreclosure suit brought by the Union Trust Company of New York and Benjamin F. Edwards as trustees, against the St. Louis, Iron Mountain and Southern Railway Company should not in the present reorganization proceedings be recognized as an unsecured claim, nor be allowed to participate in the funds available for the payment of such unsecured claims.

The matter was heard before Special Master Marion C. Early, who recommended the allowance of the claims and that they be classified as if claimants were holders of preferred stock of the Missouri Pacific Railroad Company of the par value of such claims. From the order of the lower court approving and adopting the report and recommendation of the Special Master, this appeal is prosecuted.

Claimants present a very ingenious theory for denying the validity of the deficiency judgment as an unsecured claim. As we are of the view that they are precluded by court proceedings to which they were parties, from urging this contention, we pretermit any statement of their theory and argument in this regard.

The foreclosure suit against the St. Louis, Iron Mountain and Southern Railway Company was consolidated with a creditors' suit filed against the same company, in which there was a receiver appointed. An order was entered calling for the filing of claims, and on July 25, 1915, a plan of reorganization was filed in the receivership proceedings affecting certain securities and obligations of these two railroad companies. Under the provisions of the proposed plan, general creditors were entitled to assign their claims to the Reorganization Managers, and to receive in payment par value in preferred stock of the Missouri Pacific Railroad Company, proposed to be organized for the purpose of carrying out the plan. Under this plan, provision was made for the assignment of all the first and refunding bonds to the Reorganization Managers, and they were so assigned. Decree was entered for the sale of all the properties of the companies, both mortgaged property and unmortgaged property, and the decree provided for the distribution of the proceeds of sale. It was

provided that the proceeds of sale of the unmortgaged assets should be applied to the payment of expenses, allowances and disbursements of the proceedings, then to the payment of claims against the railway company, which, pursuant to orders of court, had been presented and allowed as claims against the railway company. The decree then provided for the payment of "any deficiency claims which may be allowed by this court in favor of the Union Trust Company of New York and Benjamin F. Edwards as trustees, in favor of the holders of the refunding bonds in respect to such bonds." The decree made other provisions for payments which do not seem here to be important. It provided that these claims should be paid ratably and proportionately "to the persons whose claims shall have been so allowed and established * * * and to the trustees of said refunding mortgage or to the holders of the bonds in favor of whom such deficiency claims are allowed."

The decree of foreclosure contained provision for the entry of a deficiency judgment for the amount of any deficiency after sale of the mortgaged property. The mortgaged property was sold pursuant to the foreclosure decree and a deficiency resulted.

These claimants appealed to this court from the order of court approving the final decree, and this court held the plan to pay general creditors in preferred stock was reasonable. Abeles et al. v. St. Louis, Iron Mountain & Southern Railway Co., 8 Cir., 280 F. 38. In their appeal, claimants did not in that case assign any error as to that part of the decree which provided that deficiency judgment creditors should share ratably with general unsecured creditors in the unmortgaged assets, nor did they make any complaint thereof. Following the decision of this court in Abeles, et al. v. St. Louis Iron Mountain & Southern Railway Co., supra, holding the reorganization plan reasonable, the Special Master filed his report concerning the carrying into effect of the final decree and the allowance of the deficiency judgment. This report recommended distribution of the proceeds of sale of the unmortgaged assets and reported that there was due under the final decree a deficiency judgment for $35,102,830.14 on the mortgage foreclosure. The report was approved and deficiency judgment allowed.

■ The Special Master in the instant case concluded that the claimants were pre-cluded from now challenging the validity of the deficiency judgment as a general claim to be paid ratably and proportionately with their own claims, because they were parties to the proceedings, and particularly the case of Abeles v. St. Louis, Iron Mountain & Southern Railway Company, supra, where they appealed from the first decree approving the plan for adjusting all of these claims, including the deficiency judgment. We can see no escape from this conclusion. Lane v. Equitable Trust Co., 8 Cir., 262 F. 918.

■ It also appears from the record that these claimants assigned their claims to the Reorganization Managers and agreed to accept preferred stock of the Missouri Pacific Railroad Company at par in payment of their respective claims. The Special Master was of the view that as they had permitted this settlement to go unchallenged during all these proceedings and for all these years, they are not now in position to make claim for payment in full from the proceeds of sale of the unmortgaged assets. Claimants contend that these assignments were compulsory and not voluntarily made by them. But it was only compulsory that they assign their claims within the time fixed by the court if they desired to accept the offer under the plan. Had they desired to reject the offer, they were at liberty to do so. These assignments contain the following provision: "Nothing herein contained shall estop or in any wise prevent the undersigned from asserting that the claim hereby assigned is prior and superior in equity to the lien of the First and Refunding Mortgage of the defendant Railway Company, dated July 1, 1912, and in the event that such claim is finally adjudicated to be prior and superior, then, at the option of the undersigned, to be exercised by notice in writing given to the Reorganization Managers within sixty days after such final adjudication, this assignment shall become null and void."

As above forecast, these claimants asserted priority over the lien of the first and refunding mortgage in Berthold-Jennings Lumber Company v. St. Louis, Iron Mountain & Southern Railway Company, supra, but this contention was not sustained. The above quoted language has no application to the present contention. No lien, equitable or otherwise, is being asserted against the unmortgaged assets, but the question urged is whether the deficiency judgment constitutes a general creditor's claim and

as such entitled to participate ratably with other general claims. These assignments recited that they were made pursuant to and subject to all the terms of the modified plan and agreement of reorganization. They constitute an election to accept preferred stock of the Missouri Pacific Railroad Company at par in payment of the respective claims at par.

We are of the view that the Special Master and the lower court properly held that these contracts could not now be repudiated. It follows that the judgment appealed from should be and is affirmed.